# United Transportation Union *v.* Southeastern Pennsylvania Transportation Authority. United Transportation Union, Appellant.

Argued June 3, 1975, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Alexander A. DiSanti*, with him *Howard Richard*, and
*Richard, Brian, DiSanti & Hamilton*, for appellants.

*Bruce W. Kauffman*, with him *John F. Smith, III;
Richard S. Meyer; Dilworth, Paxson, Kalish and Levy;
Lewis H. Van Dusen, Jr.; John Markle, Jr.; Drinker,
Biddle and Reath;* and, of counsel, *Robert B. Surrick;*
and *Cramp, D'Iorio, McConchie and Surrick,* for appellee.

OPINION BY JUDGE BLATT, November 19, 1975:

This is an appeal from an order of the Court of Com-
mon Pleas of Delaware County under which members of
the United Transportation Union, Local 1594 (Union)
were enjoined from engaging in a strike against the

Southeastern Pennsylvania Transportation Authority (SEPTA) pursuant to the prohibitory language of the Public Employe Relations Act,[1] (Act 195). By enacting the said Act 195, the General Assembly attempted to regulate collective bargaining between public employers and their employes so that contract settlements might be achieved in a timely manner through the fullest use of bargaining procedures while at the same time public employees are granted the right to strike. The intention was, it would seem, to protect the public from unnecessary suffering due to the numerous inconveniences which result from work stoppages and also from the untimely settlement of agreements which interfere with the independent process of public budgeting. Unfortunately, however, Act 195 has been correctly characterized by Judge ROGERS of this Court as "often tentative, imprecise, elliptical and incomplete, leaving the hard choices either to the improbable chance that they 'may not come up,' or to the courts." *Bellefonte Area School Board v. The Bellefonte Area Education Association,* 9 Pa. Commonwealth Ct. 210, 212, 304 A.2d 922, 923 (1973).

In this action the parties have called upon the Court to resolve such imprecise rights, and the provisions giving rise to the controversy and relied upon by the court below are Sections 801, 802, and 1002 of Act 195, 43 P.S. §§1101.801, 1101.802, 1101.1002. These provide as follows:

Section 1002

"Strikes by public employes during the pendency of collective bargaining procedures set forth in sections 801 and 802 of Article VIII are prohibited. In the event of a strike during this period the public employer shall forthwith initiate an action for the same relief and utilizing the same procedures required for prohibited strikes under section 1001."

---

1. Act of July 23, 1970, P. L. 563, *as amended*, 43 P. S. §1101.101 et seq.

Section 801

"If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the 'budget submission date', and mediation has not been utilized by the parties, both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation."

Section 802

"Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within twenty days after mediation has commenced or in no event later than one hundred fifty days prior to the 'budget submission date,' the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a fact-finding panel which panel may consist of either one or three members. If a panel is so designated or selected it shall hold hearings and take oral or written testimony and shall have subpoena power. If during this time the parties have not reached an agreement, the panel shall make findings of fact and recommendations: [Specifying additional procedures not here relevant.]"

In this case, at 12:01 A.M. on April 2, 1975 the Union, which represents the operators of SEPTA's Red Arrow Division, commenced a strike against SEPTA after failing to reach agreement upon a new contract, the existing contract having expired at the end of the day of April 1, 1975. SEPTA's budget submission date[2] under Sections

---

2. See Section 301 of Act 195, 43 P. S. §1101.301.

801 and 802 was November 30, 1974, and, in accordance with those sections, negotiation had begun on June 10, 1974—more than 150 days in advance of the budget submission date. However, because no agreement had been reached by the 150th day, SEPTA sent a letter dated June 28, 1974 to the Pennsylvania Bureau of Mediation as required by Section 801. SEPTA's letter indicated that no agreement had been reached but that neither party considered that an impasse existed. The letter did not, however, "call in the service" of the Bureau as Section 801 appears to require. On July 10, 1974, the Union sent a letter to the Bureau informing it that twenty days of negotiation had passed without agreement. The Bureau then assigned a mediator to the dispute. Due to summer vacation periods, however, no further negotiation sessions were conducted until September 10, 1974 nor was mediation as yet initiated. By that date, of course, under the *schedule* of procedures of Section 802 of Act 195, mediation should have been completed and in addition the Bureau should have notified the Pennsylvania Labor Relations Board (PLRB) that an agreement had not been reached. The departure from the schedule was extended still further, however, by the failure of the parties to pursue the bargaining procedures vigorously.

Contributing to these delays were Union elections late in 1974 which resulted in substantial changes in the Union's bargaining committee. The new bargaining committee notified the Bureau on January 31, 1975 that no progress had been made since July 10, 1974 and asked whether or not the Bureau had notified the PLRB of the status of the negotiations as required under Section 802 of Act 195. There is no response apparent on the record. Finally, with the existing contract expiration date rapidly approaching, the parties scheduled a negotiating session for February 18, 1975. Sessions were not actually conducted, however, until March 7, and again on March 19, 24, 26 and March 31, straight through to 7:55 P.M. on

April 1, 1975. Not until 9:30 A.M. on April 1, 1975 did the mediator, who was assigned to the case, attend any of these sessions. At midnight on April 1 the contract expired without a new agreement having been reached, and the Union commenced a strike one minute thereafter at 12:01 A.M., April 2, 1975.

Later on April 2, 1975, SEPTA petitioned the Court of Common Pleas of Delaware County for a rule upon the Union to show cause why a preliminary injunction against continuation of the strike should not issue. The rule was granted and, thereafter, the court took testimony and issued an order enjoining the strike on the basis that the collective bargaining *procedures* designated in Sections 801 and 802 had not yet been exhausted thereby precluding a lawful strike under Section 1002. This appeal by the Union followed.

SEPTA has now moved to quash the appeal as being moot. We held in *Bellefonte Area School Board v. The Bellefonte Area Education Association,* 9 Pa. Commonwealth Ct. 210, 304 A.2d 922 (1973) that where the PLRB does not appoint fact finders, as is within its discretion under Section 802, the collective bargaining procedures contemplated by the Act have been exhausted thereby relieving the Union of the prohibitory language under Section 1002 and allowing a strike to proceed. In the instant case the PLRB had apparently decided against appointing fact finders at the time when the strike commenced. Since the filing of this appeal, however, the fact finding process has been initiated. SEPTA argues, therefore, that the collective bargaining procedures are not exhausted and that the appeal is consequently moot. The Union argues in opposition, however, that, when the schedule for procedures expires under Sections 801 and 802 and when the existing contract expires, a strike may then be lawfully instituted. The strike, the Union argues, cannot be converted thereafter into an unlawful strike by the initiation of fact finding procedures and thus this appeal would not be moot.

As we perceive the Union's argument with respect to mootness, the issues raised cannot be segregated from the merits of the appeal itself. We, therefore, deny the motion to quash and reach the merits of the appeal so as to determine the lawfulness of the strike in the first instance.

Two principles clearly emerge upon reading the aforementioned Sections 801 and 802 of Act 195. First, it is clear that the collective bargaining processes must be *scheduled* so that the public employer's proposed budget of expenditures can be adequately prepared in time for submission to the appropriate governing body for final action on the date for which such submission is required by law or practice (budget submission date). Second, it is clear that the designated substantive *procedures* of collective bargaining are to be utilized to exhaustion prior to the lawful initiation of any strike by public employes. The appellant Union in support of its position relies upon the fact that schedule provisions under Sections 801 and 802 had expired, whereas SEPTA in asserting that the strike was unlawful, relies upon the fact (as found by the court below) that the substantive procedures under these sections had not been exhausted.[3] In this case, of course, the procedures had commenced in accordance with the schedule set forth in Act 195. Adher-

---

3. The Union argues that SEPTA as the plaintiff below did not sustain its burden of proving that bargaining procedures had not been exhausted prior to April 1, 1975. Apparently, the mediator had engaged in unilateral discussions with the parties prior to April 1, 1975 and the Union argues that these communications constitute mediation under the Act and to rule otherwise would divest the mediator of his wide ranging discretion to bring about settlement. We do not believe that it is necessary here to determine whether or not unilateral communications are sufficient to constitute mediation under the Act, rather we do believe that the chancellor in the court below had adequate support in the record to determine that mediation had not taken place in this case until April 1, 1975 and that bargaining procedures, therefore, had not been exhausted at the time of the strike.

ence to the schedule, however, was short lived. The Bureau of Mediation was properly notified that no agreement had been reached, but mediation procedures, as mandated under the Act, did not take place until the final day of the existing contract. It is the Union's position that it was under no obligation "to stir up an inert Mediation Bureau". In *Bellefonte* we said the Union was under no duty to stir up an inert PLRB where that body failed to exercise its *discretionary* power to appoint a fact finding panel. We concluded in *Bellefonte* that, inasmuch as all of the *mandatory* substantive collective bargaining procedures had been exhausted and the PLRB had determined against employing fact finding procedures, then the procedures contemplated in Section 1002 had indeed been exhausted for there were no procedures of Sections 801 and 802 then pending. Such is not the case here. Unlike fact finding, mediation is *mandatory* and, therefore, where it has not been completed, the collective bargaining procedures of Sections 801 and 802 have not been exhausted. Although not to be encouraged, it makes no difference that there was a failure here to meet the statutory schedule for mediation because the prohibitory language of Section 1002 speaks of the exhaustion of procedures and not of the adherence to schedules. We do not believe, therefore, that the improper scheduling of procedures justifies a strike by employes who have yet to complete the bargaining procedures in fact. The scheduling and substantive procedures of Sections 801 and 802 are both designed to protect public interests rather than the private interests of the Union membership and Act 195 grants the right to strike subject to these protections. Because these mandatory protective measures were not fully utilized, we believe that the lower court properly enjoined the strike by these SEPTA employees. The order of the court below is, therefore, affirmed.