Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union; Joseph W. Bartlett, Business Agent; Wade L. Welsh, President; John A. Remark, Financial Secretary and William J. Lange, Recording Secretary, Individually and as Trustees ad litem, Appellants.

Port Authority of Allegheny County, Appellant v. Division 85, Amalgamated Transit Union; Joseph W. Bartlett, Business Agent; Wade L. Welsh, President; John A. Remark, Financial Secretary and William J. Lange, Recording Secretary, Individually and as Trustees ad litem, Appellees.

Argued November 1, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers and Blatt.

*James Q. Harty,* with him *Reed, Smith, Shaw & McClay; Robert M. Brown;* and *Ruffin, Hazlett, Perry & Lonergan,* for Port Authority of Allegheny County.

*Joseph J. Pass, Jr.,* with him *Samuel J. Pasquarelli,* and *Jubelirer, McKay, Pass & Intrieri,* for Division 85, Amalgamated Transit Union, et al.

OPINION BY PRESIDENT JUDGE BOWMAN, February 24, 1978:

The Port Authority of Allegheny County (PAT) is a "body corporate and politic" created pursuant to the Second Class County Port Authority Act (Port Authority Act), Act of April 6, 1956, P.L. (1955) 1414, *as amended,* 55 P.S. §551 et seq., under which it is charged with owning and operating a county-wide mass transportation system. PAT is the plaintiff in equity proceedings initiated in the Court of Common

Pleas of Allegheny County. Division 85, Amalgamated Transit Union (Div. 85), a defendant in the equity proceedings, is the bargaining representative of the vast majority of PAT's employes. Also named parties defendants are individual officers of Div. 85 (hereinafter collectively designated Div. 85). PAT and Div. 85 have, since 1964, entered into successive collective bargaining contracts of three years duration. These consolidated appeals have their genesis in a strike by PAT employes initiated on December 1, 1976, immediately following the expiration of the collective bargaining contract entered into on February 5, 1974, effective December 1, 1973, and which expired on November 30, 1976.

The strike followed rejection by Div. 85 of PAT's final offer made on November 30, 1976. A three-count complaint in equity was promptly filed by PAT seeking preliminary and permanent injunctive relief and to compel compliance by Div. 85 with the collective bargaining impasse procedures contained in Sections 801 and 802 of the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.801, .802.

Count I of PAT's complaint asserted that Div. 85 refused PAT's November 23, 1976 offer of arbitration extended pursuant to Section 13.2 of the Port Authority Act, added by the Act of October 7, 1959, P.L. 1266, 55 P.S. §563.2, and that under Section 13.2 Div. 85 was required to enter into binding arbitration, which procedure, ipso facto, precludes strikes.

Count II avers that PAT and Div. 85's membership are a public employer and public employes respectively, as those terms are defined in Sections 301(1) and (2) of Act 195, 43 P.S. §1101.301(1), (2), and that Div. 85 is an employe organization as that term is defined in Section 301(3) of Act 195, 43 P.S. §1101.301 (3). PAT continues that mediation sessions com-

menced on November 16, 1976, and that six more sessions were held between then and November 30, 1976. PAT then concludes that the strike was prohibited by Section 1002 of Act 195, 43 P.S. §1101.1002, because the substantive provisions of Sections 801 and 802 of Act 195 had not been exhausted as of December 1, 1976, *i.e.*, that the strike was unlawful in its inception.

In Count III, PAT asserts in the alternative that the strike created a "clear and present danger or threat to the health, safety and welfare of the public," and was, therefore, illegal under Section 1003 of Act 195, 43 P.S. §1101.1003.

On December 2, 1976, a hearing was conducted on PAT's prayer for preliminary injunctive relief at which hearing PAT presented testimony to the effect that mass transit in Allegheny County was inoperative; that it serviced 360,000 riders per day; that supervisory employes were Div. 85 members; that the downtown Pittsburgh area was suffering traffic tie-ups somewhat greater than normal; that thirty-four negotiating sessions had been conducted but that the mediator did not participate until November 16, 1976; that the mediator was still trying to arrange sessions; that PAT sought to invoke arbitration under Section 13.2 of the Port Authority Act on November 23, 1976, but that Div. 85 refused to participate; and that Div. 85 had initially called for mediation on June 29, 1976.

To this evidence, Div. 85 demurred and after brief argument, the lower court reopened the record for testimony and argument on, *inter alia*, the issue of compliance with those portions of Sections 801 and 802 of Act 195 requiring participants in collective bargaining talks to call for mediation no later than 150 days prior to the public employer's "budget submission date," Section 301(12) of Act 195, 43 P.S. §1101.301 (12), requiring the mediator, in the event of an impasse, to request fact-finding from the Pennsylvania

Labor Relations Board (Board) no later than 130 days prior to date of impasse.

The record reopened, PAT presented evidence that the Port Authority Act contained no budget submission date as its budget was not subject to approval or action by any other body; that it could not prepare its budget until the annual county budget containing subsidies was prepared; and that since 1971 its annual budget had been prepared on various dates roughly falling within a three months span.

In closing, PAT argued that Div. 85 had the burden of proving the legality of its strike under Section 1003 of Act 195; that it could not be bound by the time frame of Sections 801 and 802 of Act 195 as it had no "budget submission date"; that Sections 801 and 802 require twenty days of actual mediation rather than the mere passage of twenty days from the start of mediation; and that a failure on the part of PAT to negotiate in good faith, if, in fact, such was the case, would be an unfair labor practice and not a defense to an illegal strike. Section 1004 of Act 195, 43 P.S. §1101.1004.

Div. 85 argued that it was PAT's burden to prove violations by Div. 85 of Sections 801 and 802 and that PAT had failed to meet said burden because no budget submission date had been established; that Act 195 requires merely the passage of twenty days from the start of mediation; that any violations of Sections 801 and 802 which did occur were PAT's responsibility because it failed to join in Div. 85's June 29, 1976 call for mediation; and that under the fourth paragraph of Section 13.2 of the Port Authority Act, preserving to employes of the formerly private transit companies "benefits" previously enjoyed, said employes continued to enjoy an unlimited right to strike.

The lower court then sustained Div. 85's demurrer to Counts I and III of PAT's complaint in equity and

on December 3, 1976, issued an order finding that Div. 85 was engaged in a work stoppage and that the mediation and fact-finding procedures contained in Sections 801 and 802 of Act 195 had not been exhausted. Accordingly, invoking Section 1002 of Act 195, the lower court enjoined Div. 85's strike and strike-related activities and ordered PAT and Div. 85 to resume Sections 801 and 802 collective bargaining procedures. Two December 4, 1976 orders issued in response to Div. 85's motions for clarification of the December 3, 1976 order directed PAT employes to return to work under the terms and conditions existing immediately prior to the strike and to engage in ten days of mediation and, if an impasse still existed at that time, to submit to the fact-finding procedures of Section 802 of Act 195.

Div. 85 appealed to this Court at No. 2191 C.D. 1976. PAT cross appealed to No. 75 C.D. 1977 and these appeals were subsequently consolidated.

While the record is unclear as to what transpired between December 4, 1976 and December 15, 1976, it appears that mediation was fruitless and fact-finding was refused. However, on December 15, 1976, PAT and Div. 85 agreed to submit their dispute to binding arbitration with PAT agreeing to a seven cents pay increase effective with the first pay period in December, 1976. A new contract has since been entered into.

In March of 1977, Div. 85 filed a petition for contempt claiming that under the December 4, 1976 order directing PAT employes to return to work under pre-strike conditions, said employes were entitled under Section 202 of the expired contract to an additional cost-of-living increase effective March 1, 1977, which PAT was refusing to pay. No grievance on this issue was filed and no attempt was made to arbitrate it. PAT challenged the lower court's jurisdiction, citing Section 903 of Act 195, 43 P.S. §1101.903. which pro-

vides for mandatory arbitration of grievances involving an interpretation of a collective bargaining contract. The lower court asserted jurisdiction and on March 21, 1977, issued an order to the effect that the parties were at the time governed by a court imposed contract under which PAT was obligated to pay the additional cost-of-living increase as per Section 202 of the expired contract. PAT's appeal from this order is docketed to No. 735 C.D. 1977 and has been consolidated with the consolidated cross appeals at Nos. 2191 C.D. 1976 and 75 C.D. 1977.

Although the parties have not raised the issue, it appears to us that these proceedings are technically moot. A case will be dismissed if at any stage of the judicial process it is rendered moot. *Glen Alden Coal Co. v. Anthracite Miners of Pennsylvania,* 319 Pa. 192, 179 A. 446 (1935). A recognized exception to this doctrine is illustrated by cases in which technically moot issues were nevertheless decided on the merits because they were of a recurring nature, capable of repeatedly avoiding review and involved issues of important public interest. *E.g., Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, Division 998 v. Wisconsin Employment Relations Board,* 340 U.S. 416 (1951); *Werner v. King,* 310 Pa. 120, 164 A. 918 (1933). The instant appeals pose two issues directly bearing upon the collective bargaining process applicable to PAT and the collective bargaining representative of its members, which unquestionably will continue to be the subject of dispute and will reoccur in future negotiations unless now resolved. Accordingly, we shall review these issues on their merits.

We initially note that the cross appeals docketed to Nos. 2191 C.D. 1976 and 75 C.D. 1977 are from an order granting a preliminary injunction (appeal by Div. 85) and sustaining demurrers to two counts of

PAT's complaint in equity (appeal by PAT). Our scope of review in the former instance is limited to reviewing the record to determine whether the lower court had any reasonable grounds to support its decree. *Pennsylvania Securities Commission v. Continental Manufacturing Co.*, 465 Pa. 411, 350 A.2d 831 (1976) ; *Fantastic Plastic, Inc. v. Flaherty*, 26 Pa. Commonwealth Ct. 11, 361 A.2d 489 (1976). As to the latter, we must accept as true all well-pleaded factual averments and inferences fairly deducible therefrom as distinguished from conclusions of law, and will affirm the lower court only if the complaint clearly fails to set forth a cause of action. *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973) ; 9 Standard Pennsylvania Practice 390.

The cross appeals docketed to Nos. 2191 C.D. 1976 and 75 C.D. 1977 are from the December 3, 1976 order enjoining Div. 85's strike upon the theory advanced by PAT in Count II of its complaint in equity and sustaining Div. 85's demurrer to Counts I and III of said complaint.

Our review of the dismissal of Count I raises a threshold issue of whether the arbitration provisions of Section 13.2 of the Port Authority Act are tantamount to a statutory mandate to enter binding arbitration. We believe not.

The pertinent portion of Section 13.2 is as follows :

In case of any labor dispute where collective bargaining does not result in agreement, the authority shall *offer* to submit such dispute to arbitration. . . . The term 'labor dispute' shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions or benefits, including health and welfare, sick leave insurance or pension or retirement provisions but not limited thereto,

and including any controversy concerning any differences or questions that may arise between the parties including, but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements and the interpretation or application of such collective bargaining agreements and any grievances that may arise.[1] (Emphasis added.)

In *Amalgamated Transit Union, Division 85 v. Port Authority of Allegheny County (Div. 85 I)*, 417 Pa. 299, 208 A.2d 271 (1965), the Supreme Court construed the above language as *requiring* PAT to *offer* arbitration in the event of a labor dispute. Whereas in *Div. 85 I*, PAT claimed that it had sole discretion as to whether or not a labor dispute would go to arbitration, it seeks here judicial approval of its theory that arbitration is mandatory and that Div. 85 must accept PAT's "offer." Much as we may believe that arbitration would be the best means of resolving such disputes, we are constrained to note that this issue was dealt with, albeit in dicta, by the Supreme Court in *Div. 85 I*. In a footnote, Justice ROBERTS, for a unanimous Court, wrote: "The Port Authority Act [sic] provides that the Authority 'shall offer to submit' labor disputes to arbitration. . . . Acceptance of this offer would constitute an agreement to arbitrate. . . ." 417 Pa. at 307 n. 8, 208 A.2d at 275 n. 8. Thus, as both the Port Authority Act and the Supreme Court have postured this arbitration process in traditional contract terms of "offer," "acceptance" and "agreement," we are unable to find support for PAT's theory of a statutory mandate to arbitrate and must hold that Div. 85 was not obligated to "accept" PAT's "offer."

---

[1] This section was left intact by Section 2001(3) of Act 195, 43 P.S. §1101.2001(3).

We, therefore, affirm the dismissal of Count I of PAT's complaint in equity.

The only remaining portion of the Port Authority Act to which we must address ourselves before turning to the role of Act 195 in these proceedings is the fourth paragraph of Section 13.2, which provides:

> No employe of any acquired transportation system, who is transferred to a position with the authority, shall by reason of such transfer be placed in any worse position with respect to workmen's compensation, pension, seniority, wages, sick leave, vacation, health and welfare insurance or any other benefits than he enjoyed as an employe of such acquired transportation system.

Citing *Tate v. Philadelphia Transportation Co.*, 410 Pa. 490, 190 A.2d 316 (1963), for the proposition that private transportation company employes enjoy and enjoyed an unlimited right to strike, Div. 85 argues that such right exists today notwithstanding Act 195. *Supra* note 1. We disagree. "Benefit" is variously defined by Webster's as "something that promotes well-being"; "financial help in time of sickness"; and "a payment or service provided for under an annuity, pension plan, or insurance policy." To construe "benefit" as used in Section 13.2 to include an unlimited right to strike would do violence to the "common and approved usage of the term." Statutory Construction Act of 1972, 1 Pa. C.S. §1903(a). This is particularly so as it is used in conjunction with specified items traditionally viewed as either insurance protection or pecuniary compensation.

Finally, we hold that as both the Port Authority Act and Act 195 "relate to the same persons or things or to the same class of persons or things," they are in pari materia and "shall be construed together, if possible, as one statute." 1 Pa. C.S. §1932.

We are of the view that the lower court properly enjoined Div. 85's strike on the ground that the impasse procedures of Sections 801 and 802 of Act 195, to which the parties became subject when Div. 85 declined PAT's offer to arbitrate, had not been utilized to exhaustion as of December 1, 1976.

Section 801 of Act 195 provides:

If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the 'budget submission date,' and mediation has not been utilized by the parties, both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.

Section 802 provides in pertinent part:

Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within twenty days after mediation has commenced or in no event later than one hundred thirty days prior to the 'budget submission date,' the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a fact-finding panel which panel may consist of either one or three members. If a panel is so designated or selected it shall hold hearings and take oral or written testimony and shall have subpoena power. If during this time the parties have not reached an agreement, the panel shall make findings of fact and recommendations. . . .

It is clear beyond dispute that the parties had engaged in a reasonable period of negotiations but had reached an impasse thereby invoking the mandatory mediation procedures of Section 801. Div. 85 argues, however, that PAT's refusal to join in its June 29, 1976 request for mediation until November 15, 1976, only fifteen days prior to contract expiration, constituted bad faith on PAT's part relieving Div. 85 of the obligation to further pursue mediation and that in the absence of proof by PAT as to its budget submission date, no violation of Section 801 can be proven.

PAT argues that it is the substantive provisions of Section 801 which must be complied with; that the time frame contained therein is intended to protect the public interest by providing a government unit adequate time to prepare a budget and that noncompliance therewith does not vitiate Section 801's mandatory mediation provisions; that Section 101 of Act 195, 43 P.S. §1101.101, requires protection of the public's interests and not those of Div. 85; that Section 1002 of Act 195 prohibits strikes prior to the exhaustion of Sections 801 and 802; and that under Section 1004 of Act 195, if indeed PAT failed to bargain in good faith, Div. 85's recourse was to file an unfair labor practice charge with the Board and that any unfair labor practices in which PAT may have engaged could not legalize a strike otherwise in violation of Section 1002.

It appears to us from the pleadings and testimony that neither party attempted to resolve their dispute short of a strike and, instead, engaged in reckless brinkmanship with the public's safety and well-being at stake. Were there ambiguities of law or fact to resolve, we would not hesitate to do so in favor of the public's interest as stated in Section 101 of Act 195, Section 1 of the Port Authority Act and the mandate of 1 Pa. C.S. §1922(5). We need not, however, do so

as it is obvious that the substantive procedures of Sections 801 and 802 had not been exhausted prior to Div. 85's strike.

Mediation did not commence until November 16, 1976, and there were no more than seven sessions conducted thereafter. Section 802 requires twenty days of mediation before the Board is to be notified that mediation has been unsuccessful, whereupon it may or may not resort to fact-finding. *See Bellefonte Area School Board v. The Bellefonte Area Education Association,* 9 Pa. Commonwealth Ct. 210, 304 A.2d 922 (1973). We need not decide whether this means twenty days of actual mediation or the mere passage of twenty days from the start of mediation because under either interpretation, the strike of December 1, 1976, was premature and illegal under Section 1002 of Act 195.

In *United Transportation Union v. Southeastern Pennsylvania Transportation Authority,* 22 Pa. Commonwealth Ct. 25, 32, 347 A.2d 509, 512-13 (1975) (allocatur denied), we addressed ourselves to the mandatory character of Section 801 mediation and to the ramifications of a failure to comply with the time frame of Sections 801 and 802:

> Unlike fact finding, mediation is *mandatory* and, therefore, where it has not been completed, the collective bargaining procedures of Sections 801 and 802 have not been exhausted. Although not to be encouraged, it makes no difference that there was a failure here to meet the statutory schedule for mediation because the prohibitory language of Section 1002 speaks of the exhaustion of procedures and not of the adherence to schedules. . . . The scheduling and substantive procedures of Sections 801 and 802 are both designed to protect public interests rather than the private interests of the Union membership

and Act 195 grants the right to strike subject to these protections.[2] (Emphasis in original.)

Having concluded that the mediation procedures of Section 801 were not exhausted and, necessarily, that fact-finding under Section 802 was not requested, we must affirm the order of the lower court enjoining Div. 85's strike.

The third and final portion of the December 3, 1976 order of the lower court which, on the evidence before it, dismissed the third count of PAT's complaint in equity seeking injunctive relief under Section 1003 of Act 195, we shall not review on the merits. It is unnecessary that we do so in light of our decision that Sections 801 and 802 of Act 195 are applicable to the bargaining process between PAT and the representative of its employes, compliance with which is a condition precedent to a strike lawful in its inception; and for the independent reason that it is an issue wholly dependent upon factual proof on a case-by-case basis that should not be resolved when mooted by a settlement of the labor dispute.

PAT's appeal docketed to No. 735 C.D. 1977 is from the order of the lower court dated March 21, 1977, holding that under its December 4, 1976 order directing PAT employes to return to work under the conditions prevailing prior to the strike, PAT was liable to its employes for a quarterly cost-of-living increase effective March 1, 1977, as allegedly contained in Section 202 of the expired collective bargaining agreement. This issue too need not be decided in light of its being mooted by the ultimate settlement of the labor dispute in question.

---

[2] Testimony was introduced to the effect that PAT has no budget submission date as that term is defined in Section 301(12) of Act 195. In light of our disposition of this issue, it is unnecessary to discuss the matter further, but it would appear that unreasonable delay by such a government unit would be an unfair labor practice.

ORDER

Now, February 24, 1978, to the extent that we have passed upon the issues raised by the order of the lower court of December 3, 1976, even though moot, we affirm said order and otherwise dismiss the cross appeals to No. 2191 C.D. 1976 and No. 75 C.D. 1977 as moot.

The appeal to No. 735 C.D. 1977 is dismissed as moot.

———

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent.

While I concur in the majority's determination that certain of the issues in these consolidated appeals are moot and that they must, therefore, be dismissed, I am unable to join in the majority's conclusion that Section 13.2 of the Port Authority Act, 55 P.S. §563.2, permits the union here to refuse to accept the Port Authority of Allegheny County's offer to submit their labor dispute to arbitration. I would not choose to rely on footnote eight in *Amalgamated Transit Union, Division 85 v. Port Authority of Allegheny County,* 417 Pa. 299, 208 A.2d 271 (1965), in support of the argument that the statutory use of the word "offer" suggests a traditional contract setting in which such an offer may be refused. I believe, rather, that the phrase, "the authority shall offer to submit such dispute to arbitration," merely establishes *which* of the two parties has the duty to make the first effort to engage the arbitration mechanism.

While I cannot cite legal precedent in support of this position, I am guided by the language of our Supreme Court in *Amalgamated Transit Union, Division 85, supra,* which held that the Authority *must* offer to arbitrate, but which also held that the legislature intended for labor disputes to be arbitrated rather than to have an interruption of public transit:

Thus, from provisions contained in Section 13.2 there emerges an overriding legislative purpose to foster peaceful relations between the Port Authority and its employees and thereby to protect the public interest in transportation by preventing transit stoppages caused by labor disputes. As a further expression of legislative reliance on arbitration to resolve disputes, Section 13.2 provides that the 'determination of the majority of the board of arbitration thus established shall be final and binding on all matters in dispute.'

In such a setting, it is apparent from the provisions cited that the purpose of Section 13.2 is to utilize arbitration to prevent labor disputes from disrupting public service. We must agree with the court . . . 'that the section required the Authority to submit the issue to mandatory binding arbitration upon the failure of negotiations.'

Similarily, we dismiss appellant's contention that it may refuse to submit to arbitration demands which it considers unreasonable. No such qualification appears in the statute nor is there any basis whatever for implying that the Authority is vested with such controlling power. (Footnote omitted.)

417 Pa. at 303-4, 208 A.2d at 273.

Clearly, to permit the union to refuse to arbitrate would frustrate the intention of the legislature in drafting Section 13.2 so as to establish an arbitration procedure. Moreover, it would place the union in the preferred position of choosing whether or not to accept the Authority's offer when the Authority has had no choice as to whether or not to make the offer. I would find that the lower court erred in failing to hold that the union was required to submit to binding arbitration.