## Lawrence County v. District Council 85

*Frank G. Verterano, County Solicitor*, for plaintiff.

*Markowitz and Kirschmer* and *Jonathon K. Walters*, for defendants.

HENDERSON, *P.J.*, March 6, 1979—After a hearing on February 6, 1979, this court granted a preliminary injunction sought by plaintiff, enjoining the members of defendant-union from engaging in a strike or a work stoppage at plaintiff's operation of the County of Lawrence. Plaintiff had based its complaint in equity, which was filed February 2, 1979, upon allegations that defendant-union was engaged in a prohibited strike because it had failed to completely exhaust the collective bargaining procedures set forth in sections 801 and 802 of the Public Employe Relations Act of July 23, 1970, P.L. 563, art. VIII, secs. 801, 802, 43 P.S. §§1101.801, 1101.802 (hereinafter abbreviated PERA), prior to initiating the strike.

At the time of the hearing the parties stipulated to the facts relevant to a determination of this matter. Based upon these stipulations, the following findings of fact are made:

## FINDINGS OF FACT

1. On April 28, 1979, the American Federation of State, County and Municipal Employees,

(hereinafter referred to as AFSCME), was certified by the Pennsylvania Labor Relations Board by order nisi as the exclusive representative of certain employes of plaintiff for collective bargaining purposes. This certification was made absolute and final on May 8, 1978.

2. On May 22, 1978, a representative of AFSCME made a request to the county to commence negotiations. This request was again made on July 28, 1978.

3. On August 9, 1978, Richard Audino, Esq., the county's labor negotiator, called AFSCME requesting a meeting. A reply was made on August 23, 1978, scheduling a meeting which was held on August 31, 1978. The county's labor negotiator and all three of the county commissioners attended as well as a representative of AFSCME.

4. A representative of AFSCME called the county's labor negotiator or the chairman of the county commissioners on September 25, October 6, and October 10, 1978, pursuant to scheduling further meetings.

5. On October 16, 1978, AFSCME sent a notice to the Pennsylvania Bureau of Mediation requesting mediation. This request was received by the bureau on October 19. The bureau assigned the dispute to Mediator Joseph Kadilak on October 27, 1978.

6. On October 17, 1978, AFSCME received the titles and wages of employes in the bargaining unit from the county.

7. Also on October 17, 1978, AFSCME filed charges with the Pennsylvania Labor Relations Board claiming the county was refusing to meet.

8. On October 27, 1978, AFSCME made another request to commence negotiations.

9. On November 8, 1978, the Bureau of Media-

tion notified the Pennsylvania Labor Relations Board that no agreement had been reached in this matter.

10. On November 13, 1978, AFSCME requested of the mediator that he schedule a meeting.

11. A negotiating session was held on November 28, 1978, with representatives of both sides and the mediator present.

12. Further negotiating sessions were held on December 12, 15, 18 and 20, 1978, but the mediator was not present at those because of illness.

13. The mediator returned for the negotiating session of January 8, 1979, which was the seventh meeting and the second with the mediator.

14. The employes of the county who are members of AFSCME took a strike vote on January 11, 1979.

15. Negotiating sessions with the mediator present were held on January 14 and 18, 1979. Another session had been scheduled for January 16, 1979, but it had been cancelled.

16. On January 19, 1979, there was some discussion between the parties with the county commissioners present and at 3:00 p.m. that day the strike commenced.

17. The strike continued until the preliminary injunction was issued on February 6, 1979.

18. The mediator, Mr. Kadilak, is the individual who would request that the Pennsylvania Labor Relations Board appoint a fact-finding panel. At the time of the hearing he had not so requested. It is the policy of the board that fact-finding will not be conducted pending a strike. No fact-finding has been conducted in this dispute.

19. The budget submission date for the County of Lawrence is December 31.

## DISCUSSION

Initially defendants question the jurisdiction of this court to consider this matter. They take the position that the only forum with the power to consider the county's allegations is the Pennsylvania Labor Relations Board.

Defendants rely on Hollinger v. Department of Public Welfare, 469 Pa. 358, 365 A. 2d 1245 (1976), and subsequent Commonwealth Court cases to sustain their position. However these cases are not really relevant to the present situation. Hollinger and its progeny stand for the proposition that in a public employment relationship if a party directly seeks redress of conduct which arguably constitutes an unfair labor practice, then jurisdiction lies solely with the Pennsylvania Labor Relations Board.

This principle was reached in construing section 1301 of PERA (43 P.S. §1101.1301), which gives the board exclusive power to prevent any person from engaging in any unfair practice listed in section 1201 of the act (43 P.S. §1101.1201). The union maintains that the county's allegations arguably could be considered an accusation that the employe organization refused to bargain collectively in good faith with the public employer which is an unfair practice under subsection 1201(b)(3).

None of the cases cited by defendants to support their position requires such a strained construction of PERA. The cited cases deal with attempts to enjoin such matters as arbitrations of grievances, interference with an employe's right to refrain from joining or assisting an employe organization and other acts which may be construed as unfair labor practices.

But the county here is only seeking redress for the actions of AMSCME members in engaging in an allegedly prohibited strike. Defendants' position can be sustained only if a strike is considered a refusal to bargain in good faith.

At oral argument counsel for defendants further explained their position. The county charged in its complaint that defendants did not comply with all of the collective bargaining procedures set forth in sections 801 and 802 of PERA, and relies upon this failure to cause the court to find the strike prohibited under section 1002 of the act. Section 803 states that refusal to submit to the procedures set forth in sections 801 and 802 shall be deemed a refusal to bargain in good faith and unfair practice charges may be filed. Therefore, defendants argue, since the county is claiming that sections 801 and 802 were not followed, the county is claiming an unfair practice and the board has exclusive power under section 1301.

But the county is not seeking relief for the union's failure to comply with the procedures of sections 801 and 802. Its complaint was filed to stop an allegedly prohibited strike. The conduct for which redress is sought is the union's engaging in a work stoppage, not its failure to follow the required bargaining procedures.

Acceptance of defendants' argument would lead to a huge and unjustified expansion of the holding in Hollinger and would also result in an implicit abrogation of the power of the courts to enjoin strikes by public employes under section 1002 of PERA.

Section 1002 prohibits strikes by public employes during the pendency of the collective bargaining procedures set forth in sections 801 and 802 and

states that in the event of a strike during this period the public employer is to forthwith initiate an action in the court of common pleas of the jurisdiction where the strike occurs for appropriate equitable relief as is done for other prohibited strikes under the act. If the defendants' reasoning is correct, then any action by the public employer for equitable relief would be precluded.

A statute must be construed, if possible, to give effect to all of its provisions: Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A. §1922; e.g., Triumph Hosiery Mills, Inc. v. Commonwealth, 469 Pa. 92, 364 A. 2d 919 (1976). To construe the statute in the manner suggested by defendants would render section 1002 superfluous and without import.

The Commonwealth Court has recently affirmed a lower court's order enjoining a strike because of the failure of the union to exhaust the procedures set forth in sections 801 and 802: Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union, 34 Pa. Commonwealth Ct. 71, 383 A. 2d 954 (1978). If the construction of Hollinger made by defendants were correct, the Commonwealth Court should have declared that the lower court lacked jurisdiction, even though this issue was not raised by the parties, since lack of subject matter jurisdiction may be raised sua sponte by the court, even at the appellate level. E.g., Daly v. Darby Twp. School Dist., 434 Pa. 286, 252 A. 2d 638 (1969); Com. v. Klinedinst, 34 Pa. Commonwealth Ct. 110, 383 A. 2d 236 (1978). The Commonwealth Court did not mention any jurisdictional question, even though the Port Authority case was decided two years after Hollinger and after the Commonwealth Court had used Hollinger

to find jurisdiction improper in a number of cases.

The failure of the Commonwealth Court to even mention Hollinger indicates its inapplicability to situations like the present one where the conduct sought to be enjoined is a strike and not an arguably unfair labor practice. Because the courts are empowered by article X of PERA to grant equitable relief to public employers when public employes engage in prohibited strikes, we find that this court has jurisdiction to consider the county's complaint in equity.

The primary question before us is whether the strike is prohibited under section 1002 of the act which states: "Strikes by public employes during the pendency of collective bargaining procedures set forth in sections 801 and 802 of Article VIII are prohibited. In the event of a strike during this period the public employer shall forthwith initiate an action for the same relief and utilizing the same procedures required for prohibited strikes under section 1001."

At the core of any complaint filed pursuant to section 1002 are the collective bargaining procedures set forth in sections 801 and 802 of PERA.

Section 801 provides:

"If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the 'budget submission date,' and mediation has not been utilized by the parties, both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation."

Section 802 reads in pertinent part:

"Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within twenty days after mediation has commenced or in no event later than one hundred thirty days prior to the 'budget submission date,' the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a fact-finding panel which panel may consist of either one or three members. If a panel is so designated or selected it shall hold hearings and take oral or written testimony and shall have subpoena power. If during this time the parties have not reached an agreement, the panel shall make findings of fact and recommendations . . ."

In a case construing these provisions, the Commonwealth Court has characterized the act as "often tentative, imprecise, elliptical and incomplete, leaving the hard choices either to the improbable chance that they 'may not come up,' or to the courts." Bellefonte Area School Bd. v. Bellefonte Area Ed. Ass'n., 9 Pa. Commonwealth Court 210, 212-213, 304 A. 2d 922, 923 (1973). PERA, while reversing the policy of state governments prohibiting public employes from striking, only countenances strikes by public employes "upon the condition that certain ill-defined procedures have first been accomplished." Bellefonte Area School Bd., supra.

In interpreting the "ill-defined procedures" of sections 801 and 802, the Commonwealth Court has concluded that two salient principles are stressed. "First, it is clear that the collective bar-

gaining processes must be *scheduled* so that the public employer's proposed budget of expenditures can be adequately prepared in time for submission to the appropriate governing body for final action on the date for which such submission is required by law or practice (budget submission date). Second, it is clear that the designated substantive *procedures* of collective bargaining are to be utilized to exhaustion prior to the lawful initiation of any strike by public employes." United Transportation Union v. Southeastern Pa. Trans. Auth., 22 Pa. Commonwealth Ct. 25, 31, 347 A. 2d 509, 512 (1975)."

In this case it is obvious that the parties did not adhere to the schedule of the bargaining processes set forth in sections 801 and 802. Notification to the Bureau of Mediation that a dispute existed was not given until October 16, 1978, only 76 days before the county's budget submission date.

The law regulating the production of a budget for Lawrence County, a county of the fifth class, is found in sections 1780 et seq. of the County Code of August 9, 1955, P.L. 323, 16 P.S. §1780 et seq. The county commissioners are required to adopt a budget no later than December 31 and the time allowed for amending it is limited by the code.

If the schedule of procedures outlined in sections 801 and 802 of PERA were closely and timely followed, the procedures would be exhausted fully 70 days prior to the budget submission date. The chances of reaching an agreement before the budget submission date with the aid of negotiation, mediation, the fact-finding processes or even after a short-term strike are maximized by full compliance with the schedule. When the time limitations set by the legislature are ignored, the public employer may often be placed in the precarious position of estimating expenditures and setting a

tax rate based upon an estimate of the expense of an eventual collective agreement, which estimate may eventually crumble under the hard pressure of modern-day management-labor negotiations. In such circumstances, the public is the ultimate loser.

However, counsel for defendants points to language in the United Transportation Union case which seems to indicate that the schedule set forth in sections 801 and 802 does not always need to be followed. There, Judge Blatt wrote:

"Although not to be encouraged, it makes no difference that there was a failure here to meet the statutory schedule for mediation because the prohibitory language of Section 1002 speaks of the exhaustion of procedures and not of the adherence to schedules. We do not believe, therefore, that the improper scheduling of procedures justifies a strike by employes who have yet to complete the bargaining procedures in fact. The scheduling and substantive procedures of Sections 801 and 802 are both designed to protect public interests rather than the private interests of the Union membership and Act 195 grants the right to strike subject to these protections." United Transportation, supra, 22 Pa. Commonwealth Ct. at 32, 347 A. 2d at 512-513.

Initially it should be noted that in the United Transportation Union case it was the union which was trying to use the failure to adhere to the schedule of the bargaining processes to justify a strike before the processes themselves were exhausted. As we stated above, and as the court there noted, the schedules, as well as the substantive procedures, of sections 801 and 802 were designed to protect the public interest. Certainly it

would be incongruous to allow a union to use a violation of the schedule intended to promote settlement through negotiating and mediation as an excuse for striking without utilizing fully the mediation and, perhaps, the fact-finding procedures set forth in the act.

In the present situation it is the public employer which is trying to enjoin the strike based upon the lack of adherence to the schedule of procedures.

Also, in the United Transportation Union case there was initial compliance with section 801 in that the Bureau of Mediation was notified on the proper day that no agreement had been reached and a mediator was appointed shortly thereafter. It was only after this initial compliance that the matter degenerated to such a point that the mediator did not appear at a negotiation session until the day before the strike.

Here, notification was given the Bureau of Mediation only 76 days before the budget submission date or 74 days late. No explanation has been given for this delay. Certainly representatives of AFSCME, a union which represents a substantial number of public employes in Pennsylvania, should not be able to claim ignorance of the requirements of PERA. Nor, according to the stipulated facts, should either of the parties have believed that agreement was so near that mediation would be superfluous.

In view of the major factual differences between this case and United Transportation Union, we cannot say for certain that the Commonwealth Court would consider the failure of the parties in this case to adhere to the bargaining procedure schedule to be inconsequential.

But even though the United Transportation Union case may not be controlling on this issue, this

does not mean that the failure to timely notify the Bureau of Mediation is necessarily fatal to the union. The county claims this error requires us to rule, because the error cannot be corrected, that the union has forfeited its right to strike any time during the 1979 budget year. This is certainly a harsh penalty to pay for failure to comply with a schedule which it is as much the duty of the public employer as that of the public employes to follow.

At least one court, by implication, has rejected this position. In County of Mercer v. United Steel Workers, 12 Mercer 136, 60 D. & C. 2d 631 (1973), Judge Acker found a strike prohibited under section 1002 of PERA where the Bureau of Mediation was notified only 18 days prior to the budget submission date and the strike began on the day after the budget submission date. However, after granting the injunction, he specifically ordered the injunction be dissolved as soon as the fact-finding procedures set forth in section 802 were exhausted or when notice was given that a fact-finding panel would not be appointed. He did not discuss the effect of the delay in seeking mediation on the right to strike. Apparently he did not consider such delay as a matter which would bar a strike.

However, we need not rely upon this delay for determining whether or not an injunction should be issued in the present situation since, under the stipulated facts, all the substantive collective bargaining procedures set forth in sections 801 and 802 had not been utilized prior to the commencement of the strike. Specifically, section 802 requires that if an agreement has not been reached within 20 days after mediation has commenced or in no event later than 130 days prior to the budget submission date, the Bureau of Mediation shall notify the Pennsylvania Labor Relations Board,

which shall then exercise its discretion in determining whether to appoint a fact-finding panel. The only notice given the board in this case was on November 8, 1978, only 12 days after a mediator was appointed and 20 days before the mediator participated in any negotiating session with the parties.

In the Port Authority case, President Judge Bowman stated: "Section 802 requires twenty days of mediation before the Board is to be notified that mediation has been unsuccessful, whereupon it may or may not resort to fact-finding." Port Authority, supra, 34 Pa. Commonwealth Ct. at 84, 383 A. 2d at 961.

Proper notice to the board of failure to reach an agreement *after mediation* is one of the mandatory substantive collective bargaining procedures required before public employes are permitted to strike. Although the board is not required to appoint a fact-finding panel (Bellefonte Area School Board, supra), it must be allowed an opportunity to exercise its discretionary power before the procedures of section 802 are exhausted.

Under the design of sections 801 and 802, if initial negotiations between the parties result in an impasse, the Bureau of Mediation is called in. If mediation does not produce an agreement, then the Labor Relations Board is notified and given an opportunity to exercise its discretionary power to appoint a fact-finding panel. It is only after such panel's recommendations are rejected or after the board declines to appoint a panel that the procedures are exhausted and the public employes permitted to strike under section 1003, 43 P.S. §1101.1103, provided such strike does not create a clear and present danger or threat to the health, safety or welfare of the public.

The court of common pleas faced a situation similar to the present one in York Suburban School Dist. v. York Suburban Ed. Ass'n., 85 York 45 (1971). There, although the educational association received its certification too late for the parties to comply with the 150 day requirement, notification of a dispute was given the Bureau of Mediation and a mediator was appointed on February 26, 1971. The Bureau of Mediation gave notice to the board on March 16. The mediator met with the parties several times before a strike began on May 17, 1971. President Judge Atkins concluded that the strike was prohibited because the Pennsylvania Labor Relations Board was never notified that no agreement had been reached 20 days after mediation had commenced. Since the time had never arrived for the board either to appoint or decide not to appoint a fact-finding panel, Judge Atkins found that the collective bargaining procedures were still pending at the time the strike began. In making this decision, he assumed, without deciding, that the mediation had commenced upon the designation of a mediator.

Our case factually resembles the York case. In both, notification was untimely given to the Bureau of Mediation, which notified the board less than 20 days after it had appointed a mediator and before the mediator actually met with the parties at a negotiation session. We agree that under such circumstances the notice given the board was not in compliance with the procedural requirements of section 802 and therefore the substantive bargaining procedures have not been fully utilized and exhausted.

In enacting the Public Employe Relations Act, the General Assembly recognized that unresolved disputes between a public employer and its em-

ployes are injurious to the public and attempted, by the act, to establish adequate means for minimizing such disputes and to provide for their resolution: 43 P.S. §1101.101. The procedures set forth in sections 801 and 802 are obviously meant to ensure that a strike by public employes does not occur unless the collective bargaining impasse cannot be settled by other means. As of yet, the Pennsylvania Labor Relations Board has not had the opportunity to appoint or decide not to appoint a fact-finding panel to investigate the impasse and make recommendations. Since the collective bargaining procedures set forth in sections 801 and 802 have not been exhausted, we must find the strike to be one which is prohibited and grant the county's request for relief.

Finally, counsel for defendants urge that we should decline to grant equitable relief to the county because it does not come into court with clean hands. We find this argument totally devoid of merit.