CONNECTICUT STATE BOARD OF LABOR RELATIONS *v.*
GREENWICH TAXI COMPANY, INC.

GREENWICH TAXI COMPANY, INC. *v.* CONNECTICUT
STATE BOARD OF LABOR RELATIONS

KING, C. J., MURPHY, ALCORN, HOUSE and BOGDANSKI, Js.

Argued April 8—decided May 5, 1964

*Alphonse C. Jachimczyk,* assistant attorney general, with whom, on the brief, was *Harold M. Mulvey,* attorney general, for the appellant (plaintiff in the first case and defendant in the second).

*Robert C. Bell, Jr.,* for the appellee (defendant in the first case and plaintiff in the second).

ALCORN, J. These two cases, which arise under the Connecticut Labor Relations Act (General Statutes, c. 561, §§ 31-101—31-111), were tried together and argued together on appeal. In one, the state board of labor relations, which we shall call the board, petitioned the Superior Court to enforce an order of the board directing the Greenwich Taxi Company, Inc., which we shall call the company, to cease and desist from an unfair labor practice and to take certain affirmative steps in connection with that order. General Statutes § 31-109. In the other case, the company petitioned the Superior Court, under the same section of the act, to modify or set aside the order. The single issue in the two cases is whether the board correctly concluded that three dispatchers were employees of the company within the meaning of General Statutes §§ 31-101 (6) and (7)[1] so that the company was obliged to bargain

[1] "Sec. 31-101. DEFINITIONS. When used in this chapter, . . . (6) 'employee' includes, but shall not be restricted to, any individual employed by a labor organization, any individual whose employment has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, and shall not be limited to the employees of a particular employer; but shall not include any individual employed by his

with the union bargaining representative of the
company's employees concerning wages, hours, and
terms or conditions of employment of the dis-
patchers. General Statutes § 31-105 (6).[2] The court
found against the board in each case, and the board
has appealed.

The evidence before the board may be briefly sum-
marized. The company employs three dispatchers
and about thirty-five drivers. Its office is at the
Greenwich railroad station. The only officer of the
company who exercises any direction over the oper-
ation of the business is its president. He spends an
hour or an hour and a half a day at the office, or
about 10 percent of the 126 hours a week during
which the office is open. For the rest of the time the
business is operated by the dispatchers. The dis-
patchers communicate with the drivers by means of
two-way radios. The dispatchers do not drive taxis.
In general, the dispatchers' duties are to receive and
record telephone calls for taxi service, dispatch
drivers, assign particular drivers to serve the re-
quirements of customers, receive and record the
daily cash receipts collected by the drivers prepara-
tory to deposit by the company president, institute
disciplinary action when necessary against drivers
and release surplus drivers or call in extra drivers
as the volume of business requires. They do not
have the absolute authority to hire or discharge
drivers, but their recommendations in this respect

parent or spouse or in the domestic service of any person in his home,
any individual employed only for the duration of a labor dispute or
any individual employed as an agricultural worker; (7) 'employer'
means any person acting directly or indirectly in the interest of
an employer in relation to an employee . . . ."

[2] "Sec. 31-105. UNFAIR LABOR PRACTICES. It shall be an unfair
labor practice for an employer: . . . (6) to refuse to bargain col-
lectively with the representatives of employees . . . ."

are considered and acted on by the company. The dispatchers are paid an hourly wage, and the drivers receive a minimum of sixty cents an hour plus a percentage of their gross receipts and their tips.

The union, which is the bargaining representative of the company's drivers, filed with the board a charge that the company had refused to bargain concerning the wages, hours, and terms and conditions of employment of the dispatchers, pursuant to General Statutes § 31-105 (6). Following a hearing, the board decided that the dispatchers were employees for whom the union was entitled to bargain. Contrary to our suggestion in *Bisogno* v. *Connecticut State Board of Labor Relations,* 149 Conn. 4, 8, 174 A.2d 797, the board has refrained from making a finding of subordinate facts. Its only factual findings are the conclusions that the company is a Connecticut corporation with a principal place of business at the railroad station in Greenwich, that the union is a labor organization existing and constituted for the purpose, in whole or in part, of collective bargaining with employers and that the company failed and refused to engage in collective bargaining with respect to the dispatchers. While the board is not required to make a finding of subordinate facts; *L. Suzio Construction Co.* v. *Connecticut State Board of Labor Relations,* 148 Conn. 135, 138, 168 A.2d 553; *Imperial Laundry, Inc.* v. *State Board of Labor Relations,* 142 Conn. 457, 461, 115 A.2d 439; it is preferable that it do so in order that the evidence which it credits may clearly appear. The language used in this case makes it obvious that the controlling consideration motivating the board's decision was the fact that the dispatchers did not have the unre-

stricted authority to hire and dismiss employees.

The correctness of the board's decision turns on the meaning of employee under the language of our act. The definition of "employee" found in § 31-101 (6) is of no assistance on the issue here, serving, as it does, only to include or exclude described groups in or from the generic term "employee," which, in common parlance, is defined as "one employed by another . . . [usually] in a position below the executive level and . . . [usually] for wages." Webster, Third New International Dictionary. The definition of "employer" as found in § 31-101 (7) is more helpful, since it is stated to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee." § 31-101 (7). When the two subsections are read together, it becomes clear that the General Assembly intended to differentiate between employees, as that term is commonly used, and employees in a narrower meaning which excludes those persons whose duties involve acting directly or indirectly in the interest of their employer in relation to another employee.

The application of the distinction thus made must necessarily depend on the facts of each case. In making the distinction, however, it is apparent that the test must be whether, on the particular facts involved, the person or persons concerned are acting directly or indirectly in the interest of the employer in dealing with another employee. Quite obviously, the authority to hire or dismiss employees, standing alone, is an insufficient and inadequate test. The record before the board demonstrates that the dispatchers directed the company's entire operations for 90 percent of the time during which the company was open for business. We hold that, under

chapter 561 of the General Statutes and the facts of this case, these dispatchers are not employees within the meaning of § 31-101 (6), and consequently the company did not violate § 31-105 (6) in refusing to bargain with the union representative of employees concerning them.

There is no error in either case.

In this opinion the other judges concurred.