Port Authority of Allegheny County *v.*
Amalgamated Transit Union, Local
Division 85, Appellant.

Argued April 26, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Herman Sternstein,* with him *Frank R. Bolte* and *O. David Zimring,* of the Washington, D. C. Bar, for appellant.

*Nicholas Unkovic,* with him *Charles C. Cohen, Ralph Lynch, Jr.,* and *Reed, Smith, Shaw & McClay,* and *Burgwin, Ruffin, Perry, Pohl & Springer,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 1, 1968:

This is an appeal from a declaratory judgment entered in the court below.

The Port Authority of Allegheny County [1] [hereinafter Authority] operates mass transit facilities in the City of Pittsburgh and Allegheny County and employs, inter alia, 120 individuals in the position of dispatchers, inspectors, district inspectors and instructors [hereinafter Supervisory Personnel]. The Amalgamated Transit Union, Local Division 85 [hereinafter Union] is the accredited bargaining representative of the employees of Authority. A dispute arose between Authority and Union as to whether or not Union is the bargaining representative of Supervisory Personnel. [2]

---

[1] Authority was created under the provisions of the Second Class County Port Authority Act of April 6, 1956, P. L. (1955) 1414, as amended, 55 P.S. §551 et seq.

[2] Since the Authority is a public body, neither the national nor state labor boards have jurisdiction to determine collective bargaining rights of Authority personnel.

Authority then petitioned the court for a decree declaring it was not obligated to bargain collectively with those individuals included in Supervisory Personnel. Union filed preliminary objections to the petition questioning, inter alia, the propriety of an action in declaratory judgment. The court overruled the objections and entered a decree in favor of Authority. Union appealed.

The court erred in entertaining the action.

We have consistently ruled that declaratory judgment proceedings should not be entertained if there exists an available statutory remedy. *Mohney Estate,* 416 Pa. 107, 204 A. 2d 916 (1964); *Holt Estate,* 405 Pa. 244, 174 A. 2d 874 (1961); *McWilliams v. McCabe,* 406 Pa. 644, 179 A. 2d 222 (1962). In the instant situation such a remedy exists.

The Second Class County Port Authority Act, supra, §13.2, as amended, 55 P.S. §563.2 provides in part: "The Authority through its boards shall deal with and enter into written contracts with the employes of the authority through accredited representatives of such employes or representatives of any labor organization authorized to act for such employes. . . .

"In case of any labor dispute where collective bargaining does not result in agreement, the authority shall offer to submit such dispute to arbitration. . . .

"The term 'labor dispute' shall be broadly construed and shall include any controversy concerning . . . any differences or questions that may arise between the parties. . . ."

In our view the issue in controversy comes within the ambit of "labor dispute," as defined in the statute and must therefore be submitted to arbitration. Since a statutory remedy exists, an action in declaratory judgment does not lie. Cf. *Wirkman v. Wirkman Co.,* 392 Pa. 63, 139 A. 2d 658 (1958).

We need not reach the question of whether all parties having an interest in the issue were joined in the action.

Judgment vacated and proceedings dismissed.

———

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

In June, 1967, Amalgamated Transit Union, Local Division 85 (hereinafter referred to as the Union), notified the Port Authority of Allegheny County that 120 persons employed by the Authority as dispatchers, inspectors, district inspectors and instructors had designated the Union as their collective bargaining representative, and that the Union desired to negotiate with the Authority on behalf of these employees with regard to wages, terms and conditions of employment. The Authority refused to negotiate, stating that since these 120 men were supervisors and managers they could not constitute an appropriate unit for collective bargaining. The Union insisted on a right to represent the embattled 120, citing §13.2 of the Second Class County Port Authority Act of April 6, 1956, P. L. (1955) 1414, as amended, 55 P.S. §563.2, which states, inter alia: "The authority through its boards shall deal with and enter into written contracts with the employes of the authority through accredited representatives of such employes or representatives of any labor organization authorized to act for such employes concerning wages, salaries, hours, working conditions and pension or retirement provisions."

The Authority filed a petition for declaratory judgment in the court of common pleas, praying for a judgment decreeing that the Authority "is not required by Section 13.2 of the Act to recognize, deal with or enter into collective bargaining agreements in respect of managerial or supervisory personnel." The court of

common pleas sustained the position of the Authority and the Union appealed.

This Court has reversed the judgment of the court below and I agree with this decision. However, I would go further and dispose of the issue involved. I would render a decision that would definitively terminate this controversy because, under the plain wording of the statute, I do not see that there is anything to arbitrate.

The court below accepted the contention of the Authority that the word "employe" does not include managerial employes. With all respect, I cannot see how such a conclusion could be reached. All dictionaries, without exception, define an employee as "a person working for another person or business firm for pay." Managerial personnel are certainly persons employed for pay, and, therefore, employees.

In order to reach its conclusion the court below had to change the meaning of the word "employe". Boldly it asserted "this court overrules a 'clear meaning of the word.'" It thus overruled the dictionary; it thus rejected the clear meaning of clear language.

Such an exercise of judicial power is fraught with peril for regularity in the law and for understanding between employer and employe and between man and man in the commonest exchange of intelligence. If courts may at will change the meaning of words, the law of the state and nation will eventually be awash in a verbal Sargasso Sea. To say that *employe* does not mean *employe* is to martyrize the dictionary and to make of the science of language a haphazard aggregation of loose-jointed syllables.

But the court below says that the Legislature in employing the language in §13.2 must be presumed to have used it in the restrictive sense of the National Labor Relations Act, as amended by the Taft-Hartley

amendments and in decisional law and administrative policies of the Pennsylvania Labor Relations Board, which, the court says, excludes supervisory personnel from collective bargaining units.

The exact opposite is more reasonable explanation of what the Legislature intended by not modifying the word *employe*. If the Legislature is presumed to have had knowledge of the restrictions referred to by the court below, and it is reasonable to suppose that it did, and, in spite of that knowledge, did not incorporate any modification in the enactment of §13.2, the reasonable and only conclusion is that it chose not to make those restrictions applicable. If the reasoning of the lower court were to be adopted, one could never depend upon the phraseology in a statute meaning what the Legislature intended, for one would be forced to go beyond the statute to find whether, in other statutes or in decisional law, the words employed had been limited. The Legislature would be required to know all the restrictions that had been placed, either by other statutes or decisional law, on the term it had employed and it would be compelled to make numerous explanations, after the use of a term, though clear and unambiguous in its restrictions, all of which is contrary to the ordinary and logical rule of interpretation that unless restrictions are expressed they do not exist.

This is not the case for application of the rule that, where words employed in a statute had, at the time of its enactment, acquired a different meaning as a result of the judicial interpretation of prior statutes on the same subject, such words are to be given a similar interpretation in the new statute: *In re Laub*, 145 Pa. Superior Ct. 513. The Act of 1956 is in no way derived from Acts, restrictions of which the lower court sought to apply. The term *employes* has not acquired any different meaning by reason of those re-

strictions. Nor do decisions of the Pennsylvania Labor Relations Board accomplish what the lower court attributes to them.

Moreover, even if we believed that the Legislature had intended to omit supervisory personnel from the terms of §13.2 we have no authority to befog the plate-glass clarity of the statute. The Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551 mandates specifically: "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

To achieve the result announced by the court below, we would have to read §13.2 as saying "with the employes, *except supervisory personnel,*" when no such exception is made in the statute. In *Calvert Dist. Corp. v. Board of Finance and Revenue,* 376 Pa. 476, we refused to hold that a statute providing that a petition for refund must be filed within two years of the payment or settlement of the tax, was intended to mean within two years of the last payment of the resettlement of the tax, because, to achieve such a result would require a rewriting of the statute and that, "we, of course, have no rightful power so to alter the statute under the guise of construing it." The lower Court, by its interpretation of §13.2, has sought to rewrite the statute. This is beyond the jurisdiction of the court of common pleas as it is beyond the jurisdiction of the Supreme Court.

The identical question as to whether the word *employees* embraces supervisory personnel came before the United States Supreme Court in the case of *Packard Motor Co. v. Labor Relations Board,* 330 U.S. 485. There the Packard Company argued that employees in the National Labor Relations Act did not include foremen. The Supreme Court rejected the contention and,

speaking through Justice JACKSON, said: "The point that these foremen are employees both in the most technical sense at common law as well as in common acceptance of the term, is too obvious to be labored. The Company, however, turns to the Act's definition of employer, which it contends reads foremen out of the employee class and into the class of employers. Section 2 (2) reads: 'The term "employer" includes any person acting in the interest of an employer, directly or indirectly . . .' 49 Stat. 450. The context of the Act, we think, leaves no room for a construction of this section to deny the organizational privilege to employees because they act in the interest of an employer. Every employee, from the very fact of employment in the master's business, is required to act in his interest. He owes to the employer faithful performance of service in his interest, the protection of the employer's property in his custody or control, and all employees may, as to third parties, act in the interests of the employer to such an extent that he is liable for their wrongful acts."

The National Labor Relations Act, as enacted in 1935, made no distinction, so far as collective bargaining rights were concerned, between managerial employees and all other employees. In answer to the Packard Company's argument that Congress never intended to include foremen within the term *employees*, Justice JACKSON said: "It is for Congress, not for us, to create exceptions or qualifications at odds with its plain terms." In 1947 Congress made that exception (29 U.S.C. §152). The Pennsylvania Legislature was aware of all this history and if, in its collective wisdom, it concluded that managerial employees should not be treated as other employees, all it had to do was to exclude them from the operation of the Act of 1959, as Congress did in its Act of 1947.

The court below argues policy in its opinion when it says that including managerial employes within the term employes "would disrupt established managerial and production techniques, and certainly would not advance the purpose of the Port Authority Act." This is a projection into the future which the record does not indicate or even suggest. Managers and supervisors cannot have a greater interest in the success of the Authority than its operational employes because it must be apparent that, unless there is cooperation among all, with a will to see the Authority succeed, no one can benefit from the enterprise. A private in the ranks is just as anxious to achieve victory as the sergeant and the colonel because, in defeat, the whole army suffers. But, be that as it may, it is for the Legislature to establish policy, not the courts.

The lower court says: "We have adopted an interpretation of the Port Authority Act which will further the purpose of the Act." It is for the Legislature to determine in what manner classification of employes "will further the purpose of the Act." If the Authority believes that good business judgment, increased efficiency in operation, and a greater return on investment can be achieved by classifying employees, it must address this argument to the Legislature. We are here dealing not with court-made law, but with a statute passed by the representatives of the people. It is not our province to enlarge or modify the clear language of the law as written by those representatives.