**CITY OF CABOOL, Missouri, Plaintiff-respondent,**

v.

**MISSOURI STATE BOARD OF MEDIA-TION, Defendant-appellant.**

**No. 66270.**

Supreme Court of Missouri, En Banc.

April 30, 1985.

---

**52**

John Ashcroft, Atty. Gen., Mark Siedlik, Carl S. Yendes, Asst. Attys. Gen., Jefferson City, for defendant-appellant.

Donald W. Jones, Springfield, John Alpers, Cabool, for plaintiff-respondent.

Ronald C. Gladney, Clayton, for amicus curiae Mo. State Labor Council.

GUNN, Judge.

This is a public sector labor law case. The Missouri State Board of Mediation (Board) certified the International Brotherhood of Electrical Workers (IBEW) as exclusive bargaining representative for certain employees of the City of Cabool. The circuit court reversed the Board, but on further appeal, the Missouri Court of Appeals reinstated the Board's ruling. We ordered transfer of the case to this Court under Mo. Const. art. V, § 10 and also find, as did the Mediation Board, that the IBEW should be certified as bargaining representative for certain employees of the City of Cabool.

The primary issues for consideration concern the proper scope of review of the Board's decision and the composition of the bargaining unit with particular reference to so-called supervisors.

This old chestnut is jaded and sere from its many years of existence. The germ of this controversy was planted in 1967, when the IBEW held its first meeting with city employees, hoping eventually to become their exclusive bargaining representative. Subsequent disciplinary action by the city against employees for union activities led to *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35 (Mo.1969), which upheld, *inter alia,* the "meet and confer" dialectical provisions of the Public Sector Labor Law, §§ 105.500–.530, RSMo Cum.Supp.1967 (now RSMo 1978). At that time it seemed as though the matter might be safely interred, but it resolutely continues to periodically resurrect. From the time of *Missey,* indecisive skirmishing between the city, its employees and the IBEW continued until August 1977 when the IBEW petitioned the Board to certify it as the exclusive bargaining representative for city employees and to determine the appropriate bargaining unit.

After a hearing, the Board determined that the appropriate bargaining unit would consist of all employees within the following departments: electrical, parks and pool, water and sewer, trash, mechanical, and clerical. Excluded from the unit were the city administrator, the city clerk, all temporary employees hired under federal grants, all police and fire personnel and a city superintendent who supervised the streets, parks, water and mechanical departments. The bargaining unit, containing eleven employees, voted six to five on the adoption of IBEW as exclusive bargaining representative.

The city appealed the Board's decision to the circuit court, challenging the composition of the bargaining unit and the participation in the case of an officer of the IBEW as a member of the Board. The circuit court reversed on the basis of the inclusion of an electrical department head within the bargaining unit and by reason of the union officer-board member's participation in the proceeding. On further appeal, the Southern District ordered the Board's decision reinstated.

■ Preliminarily, we observe that an appellate court sitting in review of an administrative agency reviews the findings and decision of the agency and not the judgment of the circuit court. *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission,* 669 S.W.2d 548, 552 (Mo. banc 1984). Therefore, the city's challenge to the Board member's participation in the proceeding is properly addressed to the lawfulness of the Board's action. *See* § 536.140.2, RSMo 1978; *Evangelical,* 669 S.W.2d at 552.

■ The particulars of the city's challenge are that Robert Missey served as both a member of the Board and an officer of the IBEW at the time the petition for certification was filed. The city also notes that Missey signed the petition on behalf of the IBEW. As a result, the city raises the two-fold allegation that Missey's conduct violated the proscription of Section 105.480, RSMo 1969 (repealed, Laws 1978, H.B. 1610, p. 246) and that it created an "appearance of impropriety." [1]

The short answer to the first contention is that the statute on which the city relies has been repealed. However, even if the statute were in effect, its design is to prohibit an officer of an agency from appearing before that agency, or receiving fees for services, in relation to a case in which there is personal participation on behalf of the agency. There is no suggestion by the city that Missey personally participated in this case on behalf of the Board. To the contrary, the hearing officer for the Board stated his understanding at the time of the

1. The pertinent portion of former § 105.480.1 stated:

No person who has served as an officer or employee of an agency shall within a period of two years after the termination of the service or employment appear before the agency or receive compensation for any services rendered on behalf of any person, firm, corporation or association in relation to any case, proceeding or application with respect to which the person was directly concerned and in which he personally participated during the period of his service or employment.

hearing that Missey would not confer with the Board in any way concerning the case, and no evidence of his participation has been offered by the city at any stage of this proceeding.

The general argument that Missey's conduct created an "appearance of impropriety" is also without merit. This presumes that a Board member, being an official empowered to make decisions relative to the labor-management nexus, must be invested (both actually and apparently) with the same impartiality required of judicial officers. However, the explicitly partisan composition of the Board belies any such premise. Section 295.030, RSMo 1978, mandates that the Bord be comprised of two union members as well as two employers or employers'-association members, in addition to one who is neither an employee nor an employer. This composition ensures not impartiality on an individual basis, but rather impartiality based on a consensus of partisans. The participation of Board members in issue-oriented, sectarian activities is thus, presumably, not to be merely tolerated but expected.

The city's second attack on the Board's decision is directed at the inclusion of the "department head" or "section chief" of the city's electrical department in the bargaining unit. This charge is based on the holding in *Golden Valley Memorial Hospital District v. State Board of Mediation,* 559 S.W.2d 581, 583 (Mo.App.1977), that the term "employee" as it is used in the Public Sector Labor Law, §§ 105.500–.530, RSMo 1978, "excludes those persons whose duties involve acting directly or indirectly in the interest of their employer in relation to another employee." *Id., quoting Con-*

*necticut State Board of Labor Relations v. Greenwich Taxi Co.,* 151 Conn. 573, 200 A.2d 712, 714 (1964). The city construes this holding to exclude "supervisors" from the scope of covered employees under the act. The Board evidently concurs with this conclusion and has developed a set of factors by which it determines whether an employee is an excluded supervisor.[2] The Board concluded, however, that the electrical department employee was not a supervisor. The parties therefore join issue on the scope of review applicable to the Board's decision. The Board contends that its decision must be upheld as based upon competent and substantial evidence upon the whole record, § 536.140.2, RSMo 1978, and the city maintains that the "competent and substantial evidence" test does not totally circumscribe a reviewing court's inquiry into the bases for agency determinations of fact.

However, the "competent and substantial evidence" test does not apply to circumstances in which the agency's determination involves only the application of the law to the facts. § 536.140.3. In such circumstances, the reviewing "court may weigh the evidence for itself and determine the facts accordingly.... In making such determination the court shall give due weight to the opportunity of the agency to observe the witnesses and to the expertness and experience of the particular agency." *Id.; Evangelical,* 669 S.W.2d at 552. The question implicated in the present case—whether the statute excludes supervisors from its ambit—is a question of law. Such questions are reserved for the independent judgment of the reviewing court. *King v. Laclede Gas Company,* 648

---

2. The Board's qualifying factors for exclusion as a supervisor are:

  1. The authority to effectively recommend the hiring, promotion, transfer, discipline or discharge of employees.
  2. The authority to direct and assign the work force.
  3. The number of employees supervised, and the number of other persons exercising greater, similar or lesser authority over the same employees.

  4. The level of pay, including an evaluation of whether the supervisor is paid for his skill or for his supervision of employees.
  5. Whether the supervisor is primarily supervising an activity or is primarily supervising employees.
  6. Whether the supervisor is a working supervisor or whether he spends a substantial majority of his time supervising employees.
  7. The amount of independent judgment and discretion exercised in the supervision of employees.

S.W.2d 113, 114 (Mo. banc 1983). The application of the resulting principle of law to the facts of this case is a matter involving only the application of the law to the facts, such as is contemplated by § 536.140.3.

With regard to the principles of law involved in the present case, the city suggests, somewhat obliquely, that federal law provides authority for the proposition that supervisors are not within the ambit of the term "employee" as it is used in the Missouri Public Sector Labor Law. It should be noted, however, that the National Labor Relations Act, 29 U.S.C. § 152(3), (11) (1982), specifically excludes supervisors from the definition of the term "employee." The Missouri Public Sector Labor Law, by contrast, contains no such exclusion. *See* §§ 105.500, .510, RSMo 1978.[3] Furthermore, the N.L.R.A. as originally enacted contained no such exclusion, and the United States Supreme Court refused to imply such an exclusion in the face of the plain and ordinary meaning of the term "employee." *Packard Motor Car Co. v. National Labor Relations Board,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). It was as a direct response to this decision that Congress enacted the supervisory exclusion for federal labor law. *Metropolitan Edison Co. v. National Labor Relations Board,* 460 U.S. 693, 704 n. 9, 103 S.Ct. 1467, 1475 n. 9, 75 L.Ed.2d 387 (1983).

■ This contrast between the federal and the Missouri statutes evokes a question as to whether supervisors are necessarily prevented from belonging to a bargaining unit under the Missouri scheme.[4] However, this question need not be addressed in the present case, as the record clearly demonstrates that the questioned employee did not possess "supervisory" authority, either in the ordinary sense of that term or as it is defined by the Board's delineated factors. *See supra,* n. 2.

The record reveals that the employee in question was one of two employees of the department, who worked side by side. The employee had formerly been denominated the "superintendent" of the department and had communicated directly to the city council his recommendations regarding both personnel matters and suggested projects. Several months prior to the hearing, however, the city employed an administrator who was charged expressly with the authority to hire, fire, promote, set wages for, and generally supervise the employees of the city, along with the power to overrule any action taken by a department head. It follows that any supervisory authority held by the employee prior to the advent of the city administrator is immaterial, unless the evidence shows that this authority continued under the new regime. To this end, the city relies heavily on the testimony of the administrator to demonstrate his policy of delegation of authority on supervisory matters. However, the administrator's own testimony clearly shows that the ultimate authority vested in him under the ordinance was scrupulously reserved by him, and that the claimed delegations amounted to no more than solicitous autocracy with the subjective satisfaction of the administrator as the final measure. Any claimed supervisory status of the employee, whether based on actual authority or his cognomen as "department head," is therefore no more than a sinecure.

The employee in question is clearly not a supervisor. Thus, the Board was justified in refusing to exclude him from the bargaining unit under some supervisor exclusion. No other postulation has been raised

---

3. Many states, unlike Missouri, have excluded supervisors from the definition of "employees" under their public sector labor statutes. *Annot.,* 96 A.L.R.3d 723 (1979); L. Shaw and R. Clark, *Determination of Appropriate Bargaining Units in the Public Sector: Legal and Practical Problems,* 51 Ore.L.Rev. 152 (1971).

4. *See Packard, supra; Port Authority of Allegheny County v. Amalgamated Transit Union,* 430 Pa. 514, 243 A.2d 433, 436 (1968) (Musmanno, J., concurring) (requiring specific statutory exemption for so-called supervisory employees); *cf. City of Grand Island v. American Federation of State, County & Municipal Employees,* 186 Neb. 711, 185 N.W.2d 860, 864 (1971).

by the city to justify the exclusion of the employee from the bargaining unit.[5]

The judgment of the circuit court must therefore be reversed and remanded with directions to reinstate the decision of the State Board of Mediation.

RENDLEN, C.J., and HIGGINS and DONNELLY, JJ., concur.

WELLIVER, J., concurs in result in separate opinion filed.

BILLINGS and BLACKMAR, JJ., concur in separate opinions filed.

WELLIVER, Judge concurring in result.

I agree with the principal opinion that the issues regarding the composition of a bargaining unit involve substantial questions of both law and fact and that based upon the facts herein, the so-called "Electrical Superintendent" of the two-man electrical department is as a matter of fact correctly included in the bargaining unit.

I deem it both unnecessary and inappropriate that the principal opinion calls into question the Board's long-standing practice of excluding supervisory employees from bargaining units. In my opinion, such a policy was contemplated by the Legislature when it enacted the Public Sector Labor Law and is necessary if the State and its agencies and subdivisions are to effectively manage personnel. I believe Judge Turnage correctly stated the law in this State in *Golden Valley Memorial Hospital v. Missouri State Board of Mediation*, 559 S.W.2d 581 (Mo.App.1977) when he rejected the view the majority suggests today by way of dictum:

[T]he term employee cannot be literally read to include every person on the payroll of a public body. As stated in *City of Milwaukee v. Wisconsin Employ. Rel. Com.*, 43 Wis.2d 596, 168 N.W.2d 809, 812 (1969): 'someone has to sit on the city's side of the bargaining table.'

*Id.* at 583.

I feel compelled to comment on one other aspect of this case. For sometime I have been urging the Court to adopt a rule regulating the participation of amicus which would apply to all equally. *Sermchief v. Gonzales*, 660 S.W.2d 683, 687 (Mo. banc 1983); *State ex rel. Chandra v. Sprinkle*, 678 S.W.2d 804 (Mo. banc 1984) (Welliver, J., dissenting). Counsel for the Missouri State Labor Council, a non-party, was permitted by the Court not only "to intervene as amicus" and file briefs, but also to appear and argue in this case. In *Fowler v. Park Corporation*, 673 S.W.2d 749 (Mo. banc 1984), the Court summarily denied some fifteen associations and business entitles of Missouri the right even to file suggestions as amicus curiae in a matter directly affecting all of their industries.[1] Be it labor or industry, both deserve the same and equal treatment in our Court. Such inconsistency in dealing with requests to appear as amici invites accusations that the Court favors labor organizations over business interests. I urge the adoption of a rule regulating the participation of amicus curiae.

BILLINGS, Judge, concurring.

My initial vote was and continues to be one of concurrence in the principal opinion. However, I write to demonstrate there has

---

5. The city has not challenged, at any stage of this proceeding, the existence of a sufficient "community of interest," § 105.500(1), between the employee in question and the other employees included in the bargaining unit, and this Court forbears treatment of that point. *See* § 512.160.1, RSMo 1978 (no allegations of error to be considered which have not been presented or decided by the trial court).

1. Missouri Automobile Dealers Association; the Car and Truck Rental and Leasing Association of Missouri; Mercantile Bancorporation, Inc.;

Centerre Bancorporation, Inc.; Boatmen's Bancshares, Inc.; Terminal Railroad Association of St. Louis; Atchison, Topeka, and Santa Fe Railway; Burlington Northern Railroad; Chicago and North Western Transportation Co.; Chicago, Milwaukee, St. Paul and Pacific Railroad; Illinois Central Gulf Railroad; Kansas City Southern Railway Co.; Missouri-Kansas-Texas Railroad; Missouri Pacific Railroad Co.; Norfolk and Western Railway Co.; St. Louis Southwestern Railway Co.; and Kansas City Terminal Railway Co.

been no "inconsistency" in the Court's amicus curiae procedure as suggested in Judge Welliver's separate opinion concurring in result.

First of all, I would limit amicus curiae procedure drastically because in the main most amicus briefs are repetitous of the briefs filed by the real parties in interest and too often are merely vehicles for propaganda efforts. Secondly, it appears that amicus curiae participation is ordinarily limited to the filing of briefs—*before* oral argument and submission of the case for decision. Black's Law Dictionary (5th ed. 1979); *see, e.g.,* U.S. Supreme Court Rule 36.

As he did in his criticism of the Court in the *Chandra* case concerning the amicus situation, Judge Welliver again fails to acknowledge that both in *Chandra* and this case, the amicus curiae briefs were in the case *before* the case was argued, submitted and decided—contrary to what happened in *Fowler.* The *Fowler* case had not only been briefed, argued and submitted for decision by the real parties in interest but the *Court's decision had been handed down* before non-parties sought permission to file amicus briefs.

I submit there is a vast and obvious difference between amicus curiae briefs *before* decision, as here, as opposed to what happened in the *Fowler* case *after* decision.

BLACKMAR, Judge, concurring.

I concur in the principal opinion, and also join in Judge Billings' opinion, in which he explains the denial of extra time to file amicus briefs in *Fowler v. Park Corporation,* 673 S.W.2d 749 (Mo. banc 1984) in a way sufficient to satisfy any fair-minded person. I write separately because of my perspective as the author of *Fowler.*

*Fowler* was argued January 26, 1984. A draft opinion was prepared and circulated but failed of adoption. The case was reassigned to me and I circulated an opinion for consideration at the June Conference. The day before that Conference Judge Welliver circulated a dissent, in which he suggested that the opinion might have adverse effects on lenders on chattel security and on the chattel leasing industry. I considered his opinion and made some changes in my opinion to make it clear that *Fowler* ruled only a particular fact situation.[1] My opinion carried by 4 to 3 vote, with three separate dissents.

In accordance with our practice, it fell to me to report to the July Conference on the motion for rehearing in *Fowler.* The motion papers came to my attention on my return to Jefferson City July 10, 1984. At that time I noted that motions for leave to file amicus briefs had been denied by the Acting Chief Justice on July 5, 1984. I checked with the Clerk's Office to see if the proposed briefs had been tendered with the motions and found that they had not been. It appeared from the motion papers that the would-be amici were apparently concerned about the point raised in Judge Welliver's opinion, which is a matter that I had considered and discussed with the other Judges at the June Conference. I was satisfied that the proposed amicus briefs would not demonstrate anything that was "overlooked" or "misinterpreted."[2] The defendant-appellant's motions and suggestions were thorough and detailed. I studied them carefully and determined that they raised nothing new.

I reported orally at the July Conference, recommending that the motion for rehearing be overruled. No Judge expressed a desire for extended discussion. The motion was overruled without dissent.[3]

1. *See* discussion, "The Flag," 40 Journal of The Missouri Bar 280 (July—August, 1984).

2. The second paragraph of Rule 84.17 reads as follows:
   The purpose of a motion for rehearing is to call attention to material matters of law or fact overlooked or misinterpreted by the court, as shown by its opinion. Reargument of issues determined by the opinion will be disregarded.

3. Even dissenting judges do not ordinarily vote to grant a motion for rehearing unless a judge who concurred in the opinion expresses a change of position.

The Court's policy has been to allow amicus briefs freely before submission. I agree with this policy. Judge Welliver and Judge Billings would apparently be more restrictive. Since I have been on the Court, however, I know of no instance in which the Court delayed ruling on a motion for rehearing to permit non-parties to file briefs.

There was no denial of "the same and equal treatment" in the handling of the *Fowler* case. There was no invitation of "accusation that the Court favors labor organizations over business interests."

Judge Welliver also is less than candid in his statement that a non-party was permitted to appear and argue in the present case. By the Court's established practice an amicus may argue only (1) within the consent of the supported party and (2) only for such time as the supported party is willing to yield. The amicus in this case was treated as any other. The amici in *Fowler* had not appeared at the time the case was argued.

I do not know what purpose Judge Welliver has in continuing to hold the issue of amicus briefs in *Fowler* in a false light. Inasmuch as he has spread his views in the Court's official reports, response in the same medium is in order.

