## Port Authority of Allegheny County v. Local 85, Amalgamated Transit Union

*Mark S. Shiffman* and *James B. Brown*, for Port Authority of Allegheny County.

*Joseph J. Pass*, for Local 85, Amalgamated Transit Union.

McLEAN, *J.*, January 25, 1989 — Plaintiff, Port Authority of Allegheny County, owns and operates an integrated public transit system in Allegheny County. Local 85, Amalgamated Transit Union is an unincorporated labor organization, which is the duly authorized and exclusive bargaining agent for the vast majority of PAT employees.

PAT is organized and operates pursuant to the Second Class County Port Authority Act, 55 P.S. §551 et seq., as amended July 3, 1986. PAT has filed an action for declaratory relief pursuant to 42 Pa.C.S. §7531 et seq. wherein PAT seeks judicial resolution of a labor dispute arising out of the interpretation of the 1986 amendments to the Port Authority Act.

Pursuant to a 1969 arbitrator's decision, *Port Authority of Allegheny County v. Amalgamated*

*Transit Union, Local Division 85,* April 3, 1969 (Teple, *Arb.*), PAT has traditionally accorded full bargaining status to employees designated as "first-line supervisors." Subsequently the Port Authority Act was amended to change some pertinent provisions relied upon by Arbitrator Teple in the 1969 decision, raising the question of whether first-line supervisors retain their collective bargaining rights under the amendments. PAT maintains that they do not, but are merely entitled to "meet and discuss" the terms of their employment under the provisions of Act 195, the Public Employee Relations Act, 43 P.S. 1101.101 et seq. The union asserts that first-line supervisors retain their traditional bargaining rights but are simply prevented from being included in the same bargaining units as other PAT employees.

The question presented for arbitration in 1969 was whether the Port Authority of Allegheny County was required to recognize and bargain with Local 85 as the representative of its personnel in the job classifications of dispatcher, route foreman, area supervisor, and instructor under 55 P.S. §13.2 of the original Port Authority Act. That section provided that:

"The authority through its boards shall deal with and enter into written contracts with the employees of the authority through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours, working conditions and pension and retirement provisions.

. . . .

"If the authority acquires an existing transportation system, such of the employees of such trans-

portation system, except executive and administrative officers, as are necessary for the operation thereof by the authority, shall be transferred to and appointed as employees of the authority subject to all the rights and benefits of this act."

Thus the issue basically was whether supervisors were employees, rather than executive or administrative personnel, within the provisions of the Port Authority Act, and whether they could enjoy collective bargaining rights.

Arbitrator Teple answered this question in the affirmative:

"It seems plain beyond peradventure, considering this language, that the reference to employees includes all personnel except the executive and administrative officers specifically excluded. Having chosen to exclude two groups, and no others, in the chairman's opinion it must be concluded that the state legislature intended to extend the rights and benefits of the act to all other employees, regardless of the functions they may perform or the extent to which those functions may be considered supervisory in nature. Supervisors at a level below the executive and administrative officers clearly were not excluded.

"Having established the scope and meaning of the reference to employees in this manner, there is no sound basis that the chairman has been able to find for ascribing a different meaning elsewhere in the same section. The provision that the authority shall deal with and enter into written contracts with its employees through accredited representatives, manifestly is one of the rights conferred to in the language quoted above [section 13.2] and must be considered as extending to all employees other than those specifically excluded." Teple opinion at 13-4.

In reaching the conclusion that supervisory per-

sonnel are to be afforded full collective bargaining status, Arbitrator Teple relied upon a narrow interpretation of the old Port Authority Act.

Subsequently, portions of the language relied upon to resolve the 1969 dispute were amended by the legislature. However, the mere fact that the language of the Port Authority Act has changed in reference to first-level supervisors does not necessarily mean that the opposite result is now intended. Rather, the question must be examined afresh in light of the new amendments.

The amended 55 P.S. §563.2(a) reiterates the opening provisions of the old section 13.2:

"The authority through its boards shall deal with and enter into written contracts with the employees of the authority through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours, terms, and conditions of employment, and pension and retirement provisions."

However, the amended section 563.2(d) contains new language dealing specifically with first-level supervisors.

"First-level supervisors shall not be included in bargaining units with other employees of the authority. Incumbents holding first-level supervisory positions on the effective date of this subsection will be given the opportunity to continue in represented status or to terminate their bargaining unit status. Those who choose to continue in represented status shall retain the individual right to terminate their bargaining unit status at any time. All newly appointed first-level supervisors shall not be included in bargaining units with other employees of the authority. 'First-level supervisor' shall mean the lowest level at which an employee functions as a

supervisor. For the purposes of this section 'supervisor' shall mean any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employees or responsibility to direct them or adjust their grievances; or, to a substantial degree, effectively recommend such action, if, in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature, but calls for the use of independent judgment. In the event that an employee in a position defined as a 'first-level supervisor' is removed from his or her position by a layoff or other reduction in force, such employee may elect to return to the position he or she held immediately prior to becoming a 'first-level supervisor.' In all cases, such job placement will be made in accordance with full seniority."

It is PAT's position that first-level supervisors who are grandfathered into their current bargaining units under 55 P.S. §563.2(d) retain their traditional collective bargaining rights, but that incumbents who opt out of their current bargaining units and supervisors who are hired after the effective date of the amendment have no collective bargaining rights. Since the amended Port Authority Act is silent on what other rights may attach to first-level supervisors,[1] PAT suggests that the Port Authority Act be read in conjunction with Act 195, the Public Employee Relations Act, 43 P.S. §1101.101 et seq., in effect that PERA be used as a gap filler for the Port Authority Act. The specific provision of PERA that PAT wishes the court to apply is 43 P.S. §1101.704, which provides that:

---

1. Except the right to "bump" according to job seniority, a right traditionally associated with collective bargaining status.

"Public employers shall not be required to bargain with units of first-level supervisors or their representatives but shall be required to meet and discuss with first-level supervisors or their representatives, on matters deemed to be bargainable for other employees covered by this act."

After careful consideration, the court is unable to agree with PAT's position.

PAT maintains, in support of its position, that the Port Authority Act and PERA are to be read in pari materia. *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union,* 34 Pa. Commw. 71, 383 A.2d 954 (1978). Concerning the interpretation of statutes in pari materia the Statutory Construction Act, 1 Pa.C.S. §1501 et seq., provides in section 1932:

"(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

"(b) Statutes in pari materia shall be construed together *if possible* as one statute." (emphasis supplied)

Admittedly the Port Authority Act and PERA deal to a great extent with the same subject matter, and the Port Authority is a public employer within the provisions of PERA, 43 P.S. §1101.301(1). However, there exist several reasons why it would be improper to insert the provisions of PERA regarding the rights of first-level supervisors into the Port Authority Act.

First, PERA itself contains a savings clause at 43 P.S. §1101.2001 which explicitly provides that:

"The rights granted to certain public employees by the following acts or parts thereof shall not be diminished by this act: . . .

404

"(3) Section 13.2 [amended 55 P.S. §563.2] of the act of April 6, 1959 (P.L. 1414), known as the 'Second Class County Port Authority Act.'"

In light of this provision, to apply PERA to limit the rights of first-level supervisors under the Port Authority Act when the Port Authority Act itself is silent as to those rights would be a clear frustration of legislative intent.

Furthermore, the Statutory Construction Act provides in 1 Pa.C.S. §1933 that when two statutes are in conflict the more specific provisions shall prevail over the general unless the general provisions are enacted later and it is the manifest intention of the legislature that the general should prevail. In view of the PERA savings clause quoted above, such is obviously not the case here. Therefore, the more specific provisions of the Port Authority Act must control.

Finally, 1 Pa.C.S. §1932 states that statutes in pari materia must be construed together *if possible*. To do so when the legislative intent behind both is not consonant would be an act of judicial whimsy.

Having established that PERA is inapplicable to define the rights of first-level supervisors under the Port Authority Act, it remains to be seen how the Port Authority Act itself defines those rights. The amended 55 P.S. §563.2(d) provides simply that "First-level supervisors shall not be included in bargaining units with other employees of the authority."[2] It does not expressly perpetuate or limit

2. The original version of House Bill 1876 contained the following language:

"First-level supervisors shall not be included in bargaining units with other employees of the authority *but shall be permitted to form their own separate bargaining unit.*"

their collective bargaining rights under the old act. However, as the union points out, first-level supervisors are at all times referred to and defined as "employees" of the Port Authority. Therefore, it is proper to consider the provisions of the Port Authority Act regarding the bargaining rights of employees in determining the rights of first-level supervisors.

Both the old 55 P.S. §13(a) and the amended 55 P.S. §563.2(a) of the Port Authority Act contain the following identical language:

"The authority through its boards shall deal with and enter into written contracts with the employees of the authority through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours, terms and conditions of employment, and pension or retirement provisions."

The 1969 decision was based in large part upon Arbitrator Teple's conclusion that supervisory personnel were employees and thus entitled to the privileges enumerated above. This is also the rationale by which Justice Musmanno in his concurring opinion in *Port Authority of Allegheny County v. Amalgamated Transit Union, Local 85,* 430 Pa. 514, 243 A.2d 433 (1968) reached the same conclusion as that urged by the union today. "To say that employee does not mean employee is to martyrize the dictionary and to make of the science of language a haphazard aggregation of loose-jointed

PAT interprets the omission of the italicized language from the final amendment as meaning that first-level supervisors are no longer entitled to collective bargaining status. The union points out that deleted language is irrelevant to the construction of the final statute. *Commonwealth v. Alcoa Properties Inc.,* 440 Pa. 42, 269 A.2d 748 (1970). It is preferable to discern legislative intent through statement rather than silence.

syllables." Because the Port Authority Act itself defines first-level supervisors as employees and because it states that employees have collective bargaining rights it must be concluded that such rights attach to first-level supervisors notwithstanding the provisions of the amended 55 P.S. §563.2(d). Nothing in that section expressly limits the rights granted in 55 P.S. §563.2(a). What is limited is the right of first-level supervisors to be included in the same bargaining unit with other PAT employees.

It is noteworthy that PERA also restricts first-level supervisors from being in bargaining units with other employees:

"The board shall:

"(5) Not permit employees at the first level of supervision to be included with any other units of public employees but shall permit them to form their own separate homogeneous units." 43 P.S. §1101.604.

However, this restriction in and of itself does not deprive the supervisors of their collective bargaining rights. It is only by virtue of the further restriction in 43 P.S. §1101.704 that public employers under PERA are obligated only to "meet and discuss" with first-level supervisors. Because the mere prohibition of mixed bargaining units was seen by the legislature in PERA to be insufficient to restrict bargaining rights, the same must be true of the Port Authority Act. Clearly the legislature knew precisely how to limit the bargaining rights of first-level supervisors. Language similar to 43 P.S. §1101.704 of PERA could easily have been incorporated into the Port Authority Act, and yet the legislature chose not to do so, remaining silent on the issue of bargaining rights.

In 1969 Arbitrator Teple concluded that "It would certainly be presumptuous of this Board of Arbitra-

tion to undertake to supply a further exclusion in order to correct an assumed omission." Teple opinion at 15. The same is true of the court here. To fill the silence of the amended 55 P.S. §563.2(a) regarding the bargaining rights of supervisors with anything other than the provisions of 55 P.S. §563(a) conferring collective bargaining rights on employees generally would surely be an improper intrusion into the legislative branch of government.

For the foregoing reasons the following order is entered:

## ORDER OF COURT

And now, January 25, 1989, after argument, review of the record and consideration of the briefs of the parties, it is hereby ordered, adjudged, and decreed that, pursuant to the Second Class County Port Authority Act, 55 P.S. §551 et seq., the Port Authority of Allegheny County is required to collectively bargain with those employees designated as first-level supervisors through their authorized bargaining agent.