[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE NO. 105
This matter is before the court on defendant, Esis, Inc.'s, (hereinafter "Esis"), motion to strike all three counts of the plaintiff, Ralph Sansone's, (hereinafter "Sansone"), revised complaint. The issues raised by this motion are twofold: CT Page 766
1. Are common law claims against an insurer barred by the "exclusivity provisions" of the Workers' Compensation Act, General Statutes 31-275, et seq. and,
2. Does the plaintiff have to allege that the dependent engaged in a "general business practice" of misadministering workers' compensation benefits in violation of CUTPA and CUIPA, as to different persons, or is more than a single act of misconduct with respect to one person enough to establish a "general business practice?"
As to the first issue raised, the court finds that since the provisions of the workers' compensation act specifically refer to employers and not insurers, the exclusivity provisions of that act do not apply and a plaintiff does therefore have a private right of action against that insurer.
As to the second issue, the court deems that a plaintiff has properly alleged a "general business practice" whether or not he alleges that a defendant engaged in a "general business practice" of misadministering workers' compensation benefits, so long as multiple acts of misconduct with respect to himself are alleged by the plaintiff.
The following facts and statutory and case law considerations are appropriate to the courts resolvement of these issues:
The plaintiff, Sansone, alleges in a revised complaint, that while working for his employer, Shell Oil Co., he became injured. The defendant also alleges that the defendant, Esis, had a contract with Shell Oil Co., to administer workers' compensation benefits to its employees. The plaintiff further alleges that at some point after he made demand on Esis for the payment of workers' compensation benefits, the defendant did provide benefits for a period of time and later stopped providing benefits altogether. The plaintiff claims that the defendant failed to pay permanent partial disability benefits in a timely fashion, alleging bad faith on the part of the defendant and wrongful termination of those benefits in violation of CUTPA, 42-110a, et seq., and CUIPA, 38a-815, et seq.
On March 26, 1992, the defendant responded by filing a motion to strike claiming that; (1) count one of the complaint CT Page 767 was legally insufficient because the plaintiff was paid workers' compensation benefits and because common law claims against an employer or its insurer are barred by the "exclusivity provisions" of the workers' compensation act; and (2) counts two and three are legally insufficient because they fail to allege facts that would establish unfair practices for which the defendant could be liable under CUTPA and CUIPA. That motion was denied by the court on July 31, 1992.
On August 25, 1992, the defendant responded to the court's decision on its motion to strike by filing two new motions: (1) a motion for articulation — asking for an articulation of the court's decision denying its motion to strike; and (2) a motion to reargue — requesting an opportunity to reargue the previously denied motion to strike.
The court at short calendar session held on September 9, 1992 granted both motions and entertained reargument. This memorandum of decision, serves as both an articulation of the court's denial of the defendant's motion to strike on July 31, 1992, and of its present decision after reargument on September 9, 1992.
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). "In considering [a] ruling upon a motion to strike [courts] are limited to the facts alleged in the complaint[;]" King v. Board of Education of the Town of Watertown, 195 Conn. 90,93, 486 A.2d 1111 (1985); "and `cannot be aided by the assumption of any facts not therein alleged.'" Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990), quoting Fraser v. Henninger, 173 Conn. 52, 60, 376 A.2d 426
(1977). The test for deciding whether to grant a motion to strike is "whether, if the facts alleged are taken to be true, the allegations provide a cause of action. . . ." County Federal Savings and Loan Ass'n v. Eastern Associates, 3 Conn. App. 582,585, 491 A.2d 401 (1985). When courts undertake this kind of analysis they "take the facts alleged in the complaint and construe them in a manner [that is] most favorable to the pleader." Progressive Casualty Insurance Co. v. DiGangi,4 Conn. App. 137, 140, 492 A.2d 548 (1985). And if "the facts provable under that complaint would support a . . . cause of action," the motion to strike should be denied. Mingachos v. CBS, Inc., supra, 108-09. CT Page 768
"The purpose of the workmens' compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." Jett v. Dunlap,179 Conn. 215, 217, 425 A.2d 1263 (1979). Our courts "have consistently held that the exclusivity provisions of the workers' compensation act operate as a total bar to actions brought by employees against their employers for job related injuries." (Emphasis added.) Sgueglia v. Milne Construction Co., 212 Conn. 427, 433, 562 A.2d 505 (1989).
The defendant contends that courts interpreting the statute have held "that the legislature did not intend to differentiate between the employer and the insurer so far as obligations relative to compensation benefits are concerned." The defendant cites Connecticut state Board of Labor Relations v. Greenwich Taxi Co., 151 Conn. 573, 200 A.2d 712 (1964), in support of that proposition.
However, the defendant's argument is not sound. A reading of Greenwich Taxi reveals that it is inapposite to the present situation because it concerns a different statute. In that case, the court only considered the definition of "employee" under the Connecticut Labor Relations Act, General Statutes31-101, et seq. Id., 574. In fact, the court only defined "employer" to mean "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id., 577, quoting General Statutes 31-101 (7). Clearly, the Greenwich Taxi case is inapposite to the present situation because it concerns an entirely different statute.
General Statutes 31-284 (a) states in clear and unambiguous language that "an employer shall secure compensation for his employees as follows. . . ." (Emphasis added.) Further,31-284b(a) says "any employer . . . who provides accident and health insurance . . . coverage for an employee . . . shall provide to such employee equivalent insurance coverage . . . while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter. . . ." (Emphasis added.) Finally, General Statutes 31-293 (a) clearly states that:
 When any injury . . . has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect CT Page 769 thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury. . . . (Emphasis added.)
Based on the foregoing, it is obvious that the legislature did not intend to encompass the term "insurers" within the meaning of "employer."
In the instant case Esis also claims that "our supreme court has expressly held that no private right of action arises out of an employer's failure to conform to the provisions of the workers' compensation act." Coollick v. Windham, 7 Conn. App. 142,148, 508 A.2d 46 (1986). But the employer in the case at bar is not the one alleged to have failed to conform to the provisions of the workers' compensation act; rather, it is the insurer from whom the plaintiff seeks to recover.
The defendant likewise cites Johnson v. Federal Express, 18 CLT 8, p. 26 (January 14, 1992, Dorsey, J.), in its memorandum, as further support for its argument. Nevertheless, the facts of Johnson indicate that the plaintiff was injured in the course of his employment and that the defendant-employer, acting as a "self-insurer," stopped making benefits payments to the plaintiff. Although the defendant here correctly points out that the plaintiff in Johnson also sued an entity known as GAB (the company retained by Federal Express to administer its workers' compensation benefits), its reliance on this case is misplaced because the facts of the case indicate that "[f]or a time, Federal Express paid plaintiff benefits, but then stopped. . . ." Id. (Emphasis added.)
The issue in the present case concerns the relationship between an insured-employee and the insurer, not between the employee and the employer as envisioned by the language of31-284. As a result, the defendant's reliance on the aforementioned cases is misplaced. "As to the defendant's exclusivity argument, the workers' compensation act is not the plaintiff's exclusive remedy when alleging wrongful and intentional reduction or termination of benefits." Lenz v. CNA CT Page 770 Assurance Co., 5 CTLR 304, 305 (November 26, 1991, Maiocco, J.).
Since the "exclusivity provisions" of the Workers' Compensation Act do not apply to the present situation, the plaintiff-employee is not barred from bringing a common law action against an insurer, and defendant's motion to strike count one of the plaintiff's revised complaint is denied.
In its motion to strike, the defendant also raised the issue of whether the plaintiff must allege that the defendant engaged in a "general business practice" of misadministering workers' compensation benefits as to different persons, or whether more than a single act of misconduct with respect to one person is enough.
 Under the guidelines set forth in Mead v. Burns . . . for a plaintiff to allege CUIPA and CUTPA violations successfully the plaintiff must allege more than a singular failure to settle a plaintiff's claim fairly. The plaintiff must allege that the defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice.
Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 672 (1992).
The Mead court looked at the issue of insurer misconduct: "The definition of unacceptable insurer conduct in 38-61 reflects the legislative determination that isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." Plead v. Burns, 199 Conn. 651, 666, 509 A.2d 11
(1986). That court also pointed out that "the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." Id., 670, quoting Banerjee v. Robert, 641 F. Sup. 1093 (D.Conn. 1986). But as previously established, this case concerns an insurer-insured relationship, not an employer-employee relationship. "It is now well established that Connecticut courts have construed CUIPA to imply a private cause of action for monetary damages against an insurer for alleged unfair trade practices." Cecere v. EBI Indemnity Co., 2 Conn. L. Rptr., 520, 521 (October 2, 1990, Hammer, J.). Therefore, "the plaintiff CT Page 771 may bring a private cause of action against the defendant insurance company under CUIPA." Id.
Paragraph 8 of the second count of the plaintiff's revised complaint (#108) reads as follows:
 8. The actions of the defendant . . . violated the Connecticut Unfair Trade Practices Act in one or more of the following respects:
 a. in that they wrongfully and without just cause terminated the plaintiff's workers' compensation benefits;
 b. in that they failed, refused and neglected to take reasonable and necessary steps in order to determine the date of maximum medical improvement;
 c. in that they, when presented with a medical opinion indicating maximum medical improvement in May of 1991, refused to issue voluntary agreements and maintained an earlier date of maximum medical improvement despite being provided with medical substantiation that that earlier date was in error;
 d. in that they failed to take reasonable action to insure that Mr. Sansone's compensation benefits were paid in a timely fashion;
 e. in that they wrongfully and without just cause demanded that Ralph Sansone pay them substantial sums of money for alleged overpayments when they knew or should have known that no overpayments were due, and when they knew or should have known that said requests were unreasonable and caused the plaintiff mental agony and worry;
f. in that they failed, refused and CT Page 772 neglected to examine the medical evidence available in order to make a reasonable assessment as to the date of maximum medical improvement when they knew or should have known said failure resulted in substantial loss of benefits to Mr. Sansone;
 g. in that they failed to administer compensation benefits in accordance with the requirements of Connecticut's Workers' Compensation Statutes.
Paragraph 8 of the third count of the plaintiff's revised complaint is virtually identical to that in the second count except for the fact that the plaintiff alleges violations of the Connecticut Unfair Insurance Practices Act. (Plaintiff's Revised Complaint, pp. 3-5). A reading of the plaintiff's revised complaint indicates that the plaintiff has alleged that the defendant has committed the alleged wrongful acts with such frequency as to constitute a "general business practice" under Mead v. Burns, supra.
The following recent Connecticut cases support that proposition: Sambuco v. Aetna Casualty Co., 4 CTLR 90, 91 (May 14, 1991, Karazin, J.); Combustion Engineering v. Salka Sons, Inc., 3 Conn. L. Rptr. 597 (Dec. 18, 1990, Dorsey, J.); Martin v. New England Masonry, Superior Court, J.D. Waterbury (May 6, 1991, Murray, J.).
The court thereby concludes that where more than a single act of misconduct with respect to a single person is alleged, that is sufficient to set forth a cause of action that the defendant engaged in a "general business practice" of misadministering workers' compensation benefits in violation of both CUTPA and CUIPA. Accordingly, for the reasons above stated, the defendant's motion to strike counts two and three of the plaintiff's revised complaint are denied.
In summary therefore, the court denies the defendant's motion to strike counts one, two and three of the plaintiff's revised complaint.
THE COURT MAIOCCO, J. CT Page 773