505 A.2d 1360

City of Scranton, Appellant v. Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board and International Association of Machinists Local Lodge No. 2305, Appellees.

Submitted on briefs November 13, 1985, to President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Edmund J. Scacchitti,* City Solicitor, for appellant.

*James L. Crawford,* for appellee, Pennsylvania Labor Relations Board.

*Thomas W. Jennings,* with him, *Kenneth Henley, Sagot & Jennings,* for appellee, International Association of Machinists Local Lodge No. 2305.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., March 10, 1986:

The City of Scranton (City) appeals a Lackawanna County Common Pleas Court order affirming a Penn-

sylvania Labor Relations Board (Board) determination that the City committed an unfair labor practice[1] in discharging five employees for participating in a work stoppage. The common pleas court also granted the Board's petition for enforcement reinstating the five employees, who were members of the International Association of Machinists, Local Lodge No. 2305 (Union).[2]

On July 1, 1983, the Union sent a mediation notice to the Department of Labor and Industry's Bureau of Mediation stating that its contract with the City would expire on December 31, 1983, and that a labor dispute existed. The Bureau appointed a mediator, and the first bargaining session was held on November 3, 1983. The City cancelled three subsequently scheduled meetings. Therefore, the parties next met on December 27, 1983. Due to an impending snowstorm, a December 29th meeting was cancelled. However, the parties agreed to extend the contract on a day-to-day basis with negotiations to continue in good faith.

The following day the Union requested the mediator to schedule further negotiations. Bargaining sessions were held on January 12, 17 and 20, 1984. At the January 20th meeting, the City took the position that it would refuse to negotiate any further (1) while the state mediator was present and (2) until refuse collections were back on schedule. The Union instituted a work stoppage from January 21st to February 1st, when a new agreement was reached. On January 28, 1984, the City notified the five Union employees that they were discharged for ''instigating,

---

[1] The hearing examiner and the Board concluded that the City committed an unfair practice in violating Section 1201(a)(1), (3) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1201(a)(1), (3).

[2] Section 1501 of PERA, 43 P.S. §1101.1501.

ordering, directing, advising, encouraging, inciting, causing and taking part in an illegal and unlawful strike against the City of Scranton in violation of PERA."[3]

Our scope of review of a Board order is limited to determining whether its findings of fact are supported by substantial evidence and whether the conclusions drawn from those findings are reasonable. *Teamsters Local Union 77 v. Pennsylvania Labor Relations Board*, 89 Pa. Commonwealth Ct. 433, 492 A.2d 782 (1985). This Court will not lightly substitute its judgment for that of the Board, due to the Board's expertise in labor matters. *Id.*

The Board concluded that the City committed an unfair labor practice when it summarily discharged the five employees before it had attempted to obtain a court order enjoining the work stoppage, as provided in Sections 1002, 1003 and 1005 of PERA.[4]

The City contends that this conclusion is erroneous as a matter of law because (1) the Union failed to exhaust the mediation requirements of Sections 801 and 802[5] of PERA before it went on strike and (2) the discharges were due to a work slowdown led by the five employees while the negotiations were continuing.

In *Bellefonte Area School Board v. Bellefonte Area Education Association*, 9 Pa. Commonwealth Ct. 210, 212-13, 304 A.2d 922, 923 (1973), Judge ROGERS fittingly characterized PERA as follows: "It reverses the immemorial policy of state government to prohibit public employees from striking. It coun-

---

[3] N.T., 12/29/84, pp. 85-87. The employees discharged were Union President Thomas Gervasi; Union Chief Steward Charles Miller; Union Vice-President Raymond Boynton; and Union members Gerald Schalk and George Capwell.

[4] 43 P.S. §§1101.1002, 1101.1003 and 1101.1005.

[5] 43 P.S. §§1101.801 and 1101.802.

tenances strikes by public employees, but only upon the condition that certain *ill-defined* procedures have first been accomplished. . . .'' (Emphasis added.)

This case presents the question of whether the procedural negotiating requirements of PERA were followed and, if not, which party first removed itself from the controlled collective bargaining mechanism. Section 801 mandates that the State Bureau of Mediation be called in if an agreement is not reached between the parties with a definitive time period:

> If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation *but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the 'budget submission date,'* and mediation has not been utilized by the parties, *both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.* (Emphasis added.)

It is clear from the examiner's findings and the record that the Union properly notified the Bureau that a dispute existed within the time frame of this section.

However, Section 802 of PERA delineates an additional notification requirement if the Bureau's involvement is not fruitful:

> Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however an *agreement has not been reached within twenty days after mediation has commenced or in no event later than one hundred thirty days prior to the 'budget submission date,' the Bureau of Mediation*

*shall notify the board of this fact.* Upon receiving such notice the board may in its discretion appoint a fact-finding panel which panel may consist of either one or three members. If a panel is so designated or selected it shall hold hearings and take oral or written testimony and shall have subpoena power. If during this time the parties have not reached an agreement, the panel shall make findings of fact and recommendations. (Emphasis added.)

The Board noted that the record was void of any evidence that the Bureau notified the Board of an impasse. However, both the examiner and the Board inferred that the Bureau had unofficially notified the Board of the negotiations and that the Board apparently declined to appoint a fact-finder.[6]

However, the Board specifically declined to determine the timeliness of the strike under these sections because that function is strictly reserved to the courts by Sections 1001 and 1005[7] of PERA. The Board reasoned that it was the City which first aborted the collective bargaining process by refusing to negotiate further and that its subsequent discharge of the employees outside the PERA guideline constituted an unfair labor practice.

The issue before us is the propriety of the unfair labor practice charge against the City, not the legality of the work stoppage initiated by the union. The City was expressly required to contest the validity of the strike in common pleas court before it took any retaliatory action. The City's discharge notice violated PERA guidelines and constituted an unfair labor

---

[6] The Board's failure to appoint a fact-finder after receiving notification from the Bureau regarding an impasse was recognized in *Bellefonte* as a determination that fact-finding would not be fruitful under Section 802.

[7] 43 P.S. §§1101.1001 and 1101.1005.

516

practice. We hold that where an employer removes itself from the bargaining requirements of PERA, it cannot unilaterally determine that subsequent responsive action by its employees violates PERA and authorizes discharge or suspension of employees.

Finally, the City argues that the discharges were the result of work slowdowns instituted by the Union while negotiations were in progress. We agree with the Board that this allegation is not supported by the record evidence.

We hold that the Board's findings are supported by substantial evidence and that it committed no error of law.

Affirmed.

ORDER

The order of the Lackawanna County Court of Common Pleas, No. 84 Civil 4643 dated March 1, 1985, is affirmed.